ANTON CHERPESKI v. GREAT NORTHERN RAILWAY COMPANY.[1]

February 5, 1915.

Nos. 19,037—(206).

**Federal Employer's Liability Act — question for jury.**

1. Where the plaintiff, a section foreman, was working with others in taking out rails from the main line of an interstate carrier and putting others in their place, loading those taken out onto a flat car near by, and was injured while so loading, it was at least a question for the jury whether he was employed in interstate commerce within the Federal Employer's Liability Act (35 St. 65, c. 149).

**Negligence of fellow servant.**

2. It was a question for the jury whether the plaintiff was injured by the negligence of his fellow servants in raising one end of the rail while loading, without the customary signal, thereby causing the other end to hit him.

**Privilege of physician — error to exclude evidence.**

3. The testimony of physicians making an examination of the plaintiff to ascertain his physical ability to work on a railroad, their information not be-

1 Reported in 150 N. W. 1091.

ing obtained for the purpose of treating or acting for him, is not privileged, and it was error to exclude it.

Action in the district court for Lyon county to recover $20,000 for injuries received while in defendant's employ. The case was tried before Olsen, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $5,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed.

*M. L. Countryman, A. L. Janes* and *James H. Hall,* for appellant.

*Tom Davis* and *Ernest A. Michel,* for respondent.

DIBELL, C.

Action to recover for personal injuries sustained by the plaintiff while in the employ of the defendant. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or for a new trial.

The questions are:

(1) Was the plaintiff employed in interstate commerce within the Federal Employer's Liability Act (35 St. 65)?

(2) Does the evidence justify a finding that he was injured by the negligence of his fellow servants while loading a rail, which had been taken out of the track, onto a flat car?

(3) Was the evidence of certain physicians, who were not acting or prescribing for him when they obtained their information, privileged?

1. The plaintiff was a section foreman. He and those working with him were taking out the rails from defendant's main track at Marshall, Minnesota, and replacing them with others. Rails were first taken from the track and put to one side. Others were then put in their places. When this was done the old rails were put on a push car and worked over onto another track and then loaded onto a flat car. What was then their disposition does not appear. The track on which the flat car stood was used for interstate and intrastate traffic. Both interstate and intrastate traffic passed over the main line. The court left it to the jury to find whether the de-

fendant was engaged in interstate commerce and the plaintiff was employed by it therein at the time of his injury. The repair of the roadbed was a work of interstate commerce. That it was found convenient to put the old rails on a flat car, in disposing of them, does not make the work any less a part of interstate commerce work. It was a part of the general work. The next day the men were doing the same kind of work in the same way somewhere else on the line. In Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153, it was held that the Federal Employer's Liability Act applied where an employee was hit and killed by an intrastate car while carrying a pail of bolts with which to repair a bridge carrying both interstate and intrastate traffic. The language of the court in that case reaches the situation presented in the case at bar. It said:

"Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency   *   *   * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of the opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements, and the nature of each determined regardless of its relation to others or to

the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? * * * Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such.

"True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce.

"The point is made that the plaintiff was not, at the time of his injury, engaged in removing the old girder and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one. * * * "

In Central R. Co. v. Colasurdo, 192 Fed. 901, 113 C. C. A. 379, a switch repairer was held within the act; in Zikos v. Oregon R. & N. Co. (C. C.) 179 Fed. 893, a section hand; in Horton v. Oregon-Washington R. & N. Co. 72 Wash. 503, 130 Pac. 897, 47 L.R.A. (N.S.) 8, a pumper riding to his pumping station on a hand car provided by the railroad; and in St. Louis S. F. & T. Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. ed. 1129, Ann. Cas. 1914C, 156, a yard clerk going across the yards to meet an incoming interstate train.

It was at least a question for the jury whether the plaintiff was employed in interstate commerce within the meaning of the Federal Employer's Liability Act; and the trial court submitted the question to the jury.

2. The plaintiff claims that he was injured through the negligence

of his fellow servants in throwing one end of a rail onto the car before the usual notice or warning was given. If he was engaged in interstate commerce the negligence of a fellow servant does not relieve the defendant of liability. The evidence is such that the jury might find that the usual notice was not given; that the rail which was being loaded partially balanced on the side of the car, one end dropping down towards the plaintiff and hitting and injuring him; and that the injury was the result of the negligence of the coservants of the plaintiff.

3. The defendant called Dr. Workman and Dr. Quinn to testify as to the extent of the plaintiff's injuries. Dr. Workman was the physician and surgeon of the Northwestern road residing at Tracy. The defendant proposed showing that the plaintiff went to him and had an examination made for the purpose of ascertaining whether he could enter the service of the road. Dr. Quinn was the general surgeon of the defendant. The plaintiff, according to the offered proof, went to him to ascertain whether he was physically able to remain in the service of the company. In neither case was curative treatment contemplated. In neither case did the physician obtain information to enable him to prescribe or act for the plaintiff. Objections to the proposed testimony were sustained upon the ground that the information sought was privileged.

At common law communications between physician and patient or information obtained by the physician in treating his patient were not privileged. The privilege comes from the statute. Our statute is as follows:

"A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity." R. L. 1905, § 4660 (G. S. 1913, § 8375).

From the showing made or offered to be made it affirmatively appeared that the information obtained by Dr. Workman and Dr. Quinn was not privileged.

It is suggested that the error in excluding the testimony was without prejudice since there was other evidence of the character

which these physicians would have given. We are unable to see
it so. The extent of the plaintiff's injuries was the subject of sharp
contest. Presumably the testimony of these physicians would have
been helpful. The defendant had the right to have it before the
jury. It was error to exclude it.

Order reversed.