[Crim. No. 2831.  First Dist., Div. One.  Nov. 12, 1952.]

THE  PEOPLE,  Respondent,  v.  MAJOR  EBERHARD, Appellant.

J. Maxwell Peyser for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Defendant appeals from the judgment rendered upon his conviction of possessing heroin in violation of section 11500 of the Health and Safety Code, and from the order denying his motion for new trial.

He claims (1) the evidence was insufficient to show possession by the defendant because (a) proof that he knew of the existence of this substance, or of the package in which it was found, is lacking, and (b) the manner in which the package was found makes it inherently improbable that there was any possession in the defendant, and (2) the admission of certain evidence deprived defendant of a fair trial and thus violated the due process clause of the Fourteenth Amendment to the United States Constitution.

(1) *As to the sufficiency of the evidence,* examination of the record compels the conclusion that the verdict finds ample support in the evidence. A brief narrative of the testimony will suffice.

The package was found in a lightwell opposite bathroom windows in the apartment occupied by defendant and one Mildred Johnson. There was no other access to this lightwell except from the roof, for the wall of the adjoining house was solid, without a window or other opening and the two houses were but an inch or an inch and a half apart. When the police arrived Mildred Johnson came to the door, asked who was there, and was told "It's the police." She then said in a rather loud voice, "The cops are here." About 30

seconds later she opened the door and the police entered. Officer O'Brien headed across the living room and met defendant coming from the direction of the bathroom. O'Brien immediately went to the bathroom. He found no narcotics. There were two windows, both open at the top. He looked into the lightwell and on the bottom was a small brown package tied with a rubber band. He retrieved the package. The night was foggy and other papers in the lightwell were damp. The lightwell itself was moist. The brown package was dry. The package contained two needles inserted in a roll of adhesive tape and a number of small white paper packets which contained a white powder. The package contained 28 bindles totaling 47 grains of heroin. The practice of users of heroin is to dissolve some of the powder in a spoon and inject it into themselves through a hypodermic needle attached to an eyedropper. Defendant was examined by a physician the next morning. The physician testified that he found on defendant's upper left arm and shoulder over 25 puncture wounds, some of 24 hours' or less duration and some were older and might have been of a week or 10 days' duration.

A prosecution witness, Anita Sturgis, testified that some eight days before, in this apartment, defendant put something into a spoon, then put in some water and with a needle attached to an eyedropper injected the solution into the arm of one Nancy, then Mildred and then himself. Other persons present also took injections. Anita did not receive an injection. Defendant asked her if she wanted one, but she said no. He said they were injecting cocaine into themselves. Later that day, Anita saw the people at the apartment taking more injections in the upper arm, which they called a "skin pop." That night Anita stayed at the apartment. The next day she saw more injections being taken of the substance they called "coke" or "cocaine." She saw defendant go to the bathroom window and take out a box which he put on the kitchen table. The box was wrapped in a newspaper, which he removed. In it were little white papers which he took out, unfolded and put the contents into a spoon. He told her that the box was kept on the window ledge outside. He did not want it in the house.

At the oral argument, but not in his briefs, defendant contended, without citation of authority, that Anita Sturgis' testimony is not available for consideration in ascertaining the sufficiency of the evidence. He predicated this contention upon the facts that the indictment, in a separate count,

accused him of having raped Anita Sturgis,· and the jury acquitted him upon that count. He argued that the jury by its acquittal demonstrated its disbelief of Anita's testimony as to that charge, and concluded, as a matter of law, that all the rest of her testimony must be disbelieved and rejected. That is not the law. ■ Determination of the credibility of a witness is the function of the trier of the facts. This includes the witness whom the trier of the facts disbelieves in part. ■ Disbelief of part of the testimony of a witness does not require rejection of the rest of that witness' testimony. (*Rolland* v. *Porterfield*, 183 Cal. 466, 470 [191 P. 913] ; *People* v. *Holman*, 72 Cal.App.2d 75, 89-90 [164 P.2d 297] ; 27 Cal.Jur. 182-186, Witnesses, §§ 156 and 157.)

The evidence we have narrated would reasonably support inferences that defendant knew of the package, that he had placed it in the lightwell, and that he knew it contained narcotics. This evidence is similar to, and if anything stronger, than that which was found sufficient in *People* v. *Bassett*, 68 Cal.App.2d 241 [156 P.2d 457].

■ ·(2) *As to due process.* In his reply brief, filed after oral argument, with permission to present a certain point, not this point, defendant claims that evidence of the physical examination of his arm deprived him of a fair and impartial trial and compelled him to be a witness against himself in violation of the due process clause as interpreted and applied by the United States Supreme Court in *Rochin* v. *California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R. 2d 1396]. While such a contention made for the first time in a final brief need not be considered (*Kahn* v. *Wilson*, 120 Cal. 643 [53 P. 24]), we will nevertheless entertain it because it illustrates a misconception of the effect of the Rochin case upon the administration of criminal justice.

■ During the course of the trial a physician testified, without objection from defendant, that he had examined defendant on the morning after his arrest and found on defendant's left shoulder or upper arm a number of puncture wounds, some of which may have been of 24 hours' or less duration. A police officer testified that he took defendant to the physician for the examination. The officer was asked but upon defendant's objection was not permitted to testify concerning the purpose of the examination. The effect of this evidence was to allow the jury to draw an inference that defendant was an addict. There was testimony that

defendant on several occasions had taken "shots" of what he called "coke" or "cocaine." These "shots" were administered in his left upper arm or shoulder.

That the ruling in the Rochin case does not apply in this case is readily apparent from an examination of the decision in that case. There the court deemed the conduct of the officers when they arrested the defendant without a warrant such as was "bound to offend even hardened sensibilities" and "too close to the rack and the screw to permit of constitutional differentiation." (96 L.Ed. 190.) The brutal conduct of the arresting officers, not the defendant's involuntary self-incrimination, was the crucial and critical element. The arresting officers forcibly broke into defendant's home. They saw some capsules on a night stand. Defendant put them into his mouth. The officers choked him in an attempt to force him to disgorge them. This failing, defendant was taken to a hospital where an emetic solution was forced into his stomach against his will, causing him to emit the capsules, which proved to contain morphine. The capsules were introduced into evidence at his trial and were the basis of his conviction for the possession of narcotics. Of this the court said "to sanction the brutal conduct which naturally enough was condemned by the court whose judgment is before us, would be to afford brutality the cloak of law. Nothing would be more calculated to discredit law and thereby to brutalize the temper of a society." (96 L.Ed. 191.)

The conduct of the arresting officers in the instant case was in sharp contrast to that of the officers in the Rochin case. Here the officers were admitted to the home of defendant after announcing that they were officers. Defendant was arrested pursuant to a warrant and was taken to a physician who examined his upper left arm. There is no indication that force was used, nor any hint of brutality. We find no basis for applying in this case the ruling made in the Rochin case.

Even if the evidence of the puncture wounds on defendant's arm was illegally obtained (we do not hold that it was), the judgment should nevertheless be affirmed. ■ A rule of evidence applicable to criminal proceedings in a state court which allows the introduction of evidence illegally obtained does not on that account alone offend the due process clause of the Fourteenth Amendment to the United States Constitution. (*Wolf* v. *Colorado,* 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782] discussed in 38 Cal.L.Rev. 498. See, also,

*Stefanelli* v. *Minard*, 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138], decided at the same term as the Rochin case.) The testimony of the doctor in our case has nothing in common with the forced confessions ,used in violation of the due process clause in *Brown* v. *Mississippi*, 297 U.S. 278 [56 S.Ct. 461, 80 L.Ed. 682]; *Chambers* v. *Florida*, 309 U.S. 227 [60 S.Ct. 472, 84 L.Ed. 716]; or *Ashcraft* v. *Tennessee*, 322 U.S. 143 [64 S.Ct. 921, 88 L.Ed. 1192]. ▇ The admission of involuntary self-incriminating evidence not procured by force or violence does not violate the due process clause. (*Adamson* v. *California*, 332 U.S. 46 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223].) Rather, it is brutality in the procuring of the evidence which is condemned. This was made clear by Mr. Justice Frankfurter in the Rochin case when he said: "In deciding this case we do not heedlessly bring into question decisions in many States. dealing with essentially different, even if related, problems. We therefore put to one side cases which have arisen in the State courts through the use of modern methods and devices for discovering wrongdoers and bringing them to book. It does not fairly represent these decisions to suggest that they legalize force so brutal and so offensive to human dignity in securing evidence from a suspect as is revealed in this record." (96 L.Ed. 191.)

The judgment and the order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.