STATE v. GEORGE EMERSON.

123 N. W. (2d) 382.

August 9, 1963—No. 38,469.

*Louise Miller O'Neil,* for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Albert E. Ranum,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

Defendant having been found guilty of the crime of robbery in the first degree appeals from the judgment of conviction.

In the early hours of August 14, 1960, two masked men appeared at the Auditorium Hotel in the city of St. Paul and at the point of a gun took from the night clerk $18 in cash. In making their escape, one of the robbers, who was carrying a sawed-off shotgun, accidentally discharged it in the stairway leading from the hotel. It is the contention of the state that defendant took part in the crime and was preceding his companion in leaving the premises when he was wounded by the gunshot. Sometime later that morning what appeared to be the getaway car, containing a shotgun and nylon stockings similar to the masks worn by the robbers, was found in the vicinity of the apartment where defendant was later apprehended. The car also contained evidence of blood stains.

The whereabouts of the robbers was revealed to the police by an undisclosed informant, and proceeding to the address indicated they found defendant partially undressed, lying on his face in bed, with his bare back exposed. A number of pellet holes in his legs and buttocks were revealed when he changed his clothes. Defendant was thereupon taken into custody. There is no evidence of how the arrest was made or in what manner the police gained entrance to the premises. Defendant makes no claim that they entered by force but complains that his apprehension resulted from a phone call by an unidentified citizen and that this did not constitute probable cause sufficient to justify an arrest without a warrant.

On the day he was picked up defendant was permitted to confer with counsel, and on the following day retained the attorney who represented him both at the trial and in this appeal.

While in custody defendant was examined at the county hospital by Dr. Robert A. Van Tyn, but because defendant declined to give his consent, the doctor refused to comply with the request of the police to remove pellets from defendant's body. He did, however, testify to the existence of a number of small, crusted wounds. The defendant was thereafter examined further by Dr. Ronald Nelson, who said he observed a number of foreign bodies in defendant's thigh, buttocks, and legs. He also declined to remove any shotgun pellets but ordered the taking of X rays. Dr. Nelson testified that defend-

ant did not object either to his conducting the examination or taking the X rays. This testimony was not contradicted by the defendant when he took the stand on his own behalf. It appears that police officers were present during both examinations. The closest defendant comes to claiming coercion is an assertion that he believed pellets were about to be removed from his body without his consent, and consequently he voluntarily gave the authorities several which had already worked their way through his skin. In addition to the X rays, photographs of defendant's back were taken and, over objection, received in evidence.

Defendant assigns as error the court's failure to exclude the photographs, the testimony of Dr. Nelson, and the medical records and X rays taken at the county hospital.

■ Defendant has expressly disclaimed assigning as error the illegality of the arrest, recognizing that under our decisions that right must be asserted before trial.[1] Likewise, in his brief defendant concedes that the "poison fruit" doctrine made applicable to state courts by the decision in Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081, does not apply retroactively. However, in oral argument counsel for defendant takes a somewhat inconsistent position by asserting that the evidence to which he objects is tainted by the alleged illegality of his arrest. In this connection defendant contends that the observations made by the arresting officer and the subsequent examination, photographs, and X rays should all have been excluded as the products of an unreasonable search and seizure prohibited by U. S. Const. Amend. IV and by Minn. Const. art. 1, § 10. Defendant calls attention to Wong Sun v. United States, 371 U. S. 471, 485, 83 S. Ct. 407, 416, 9 L. ed. (2d) 441, 454, which cites with approval McGinnis v. United States (1 Cir.) 227 F. (2d) 598, 603. The Federal court in the McGinnis case excluded

---

[1]State ex rel. Farrington v. Rigg, 259 Minn. 483, 485, 107 N. W. (2d) 841, 842. With respect to the arresting officer's testimony of his initial observation of defendant, see also City of St. Paul v. Stovall, 225 Minn. 309, 313, 30 N. W. (2d) 638, 641; State v. Demry, 260 Minn. 173, 180, 109 N. W. (2d) 587, 592.

testimony of a witness' observations made while conducting an unreasonable search, and adopted the position that the "poison fruit" doctrine applies as well to what is seen as to what is seized.

We do not deem it necessary to apply the McGinnis rule to the instant case. The record does not show the source of the officer's information and we will not assume it was unreliable. If the arrest was effected on the basis of advice furnished by a trustworthy informant, it was sufficient to constitute probable cause for the arrest and to render admissible observations made incident to it.[2]

Our statute permits an arrest without a warrant when a felony has in fact been committed and the officer has reasonable cause for believing the person arrested committed the crime.[3] In view of the inadequacy of the record with respect to the facts which prompted the arrest, and the defendant's failure to object to the testimony of what the arresting officer observed, we hold that there is no occasion to determine whether Mapp v. Ohio, *supra,* applies retroactively, and decline to do so.

■ Defendant urges that the evidence he deems objectionable should have been excluded under the rule adopted in Rochin v. California, 342 U. S. 165, 72 S. Ct. 205, 96 L. ed. 183, 25 A. L. R. (2d) 1396. In that case the police extracted capsules of narcotics from defendant's stomach by the use of a pump. The United States Supreme Court, finding that such procedure "shocks the conscience" and constitutes "methods too close to the rack and the screw to permit of constitutional differentiation," held that the evidence was secured in violation of the due process provisions of the Fourteenth Amendment and hence was inadmissible. More recently however the court found nothing objectionable about a doctor's taking blood from an unconscious defendant for use against him in a manslaughter prosecution arising out of a drunken-driving charge. The court held that judged by the community's sense of decency and fairness, there was

[2]Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. ed. (2d) 327.

[3]Minn. St. 629.34(3). See, State v. Harris, 265 Minn. 260, 121 N. W. (2d) 327.

nothing brutal or offensive in the procedure followed, and observed (Breithaupt v. Abram, 352 U. S. 432, 439, 77 S. Ct. 408, 412, 1 L. ed. [2d] 448, 452):

"* * * Modern community living requires modern scientific methods of crime detection lest the public go unprotected."

We have no difficulty in holding that tested by these rules it was not a violation of the due process provisions of the Fourteenth Amendment to subject this defendant to photographs, X rays, and a physical examination, more particularly in the light of his tacit acquiescence. Defendant suffered no hardship which offends our sensibilities. The methods followed were simple, uncomplicated, and painless. It was the kind of routine procedure to which most of us have long been accustomed.

■ The Constitutions of both Minnesota and the United States provide that no person shall be compelled in any criminal case to be a witness against himself.[4] We are not impressed with defendant's contention that the presence of police officers constituted coercion which deprived his acquiescence of its voluntary character. Defendant was not justified in assuming that the police were there to see that he was forcibly subjected to examination. There is nothing in the record to warrant such an assumption. In any case, the great weight of authority holds that the constitutional guaranty against self-incrimination applies only to testimonial compulsion.[5] Mr. Justice Holmes has stated that "the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."[6] A contrary suggestion in the dissent of Mr. Justice Douglas in the Breithaupt case does not persuade us.[7]

---

[4]Minn. Const. art. 1, § 7; U. S. Const. Amend. V.

[5]8 Wigmore, Evidence (McNaughton Rev.) §§ 2263 and 2265.

[6]Holt v. United States, 218 U. S. 245, 252, 31 S. Ct. 2, 6, 54 L. ed. 1021, 1030.

[7]Breithaupt v. Abram, 352 U. S. 432, 442, 77 S. Ct. 408, 414, 1 L. ed. (2d) 448, 455.

A Minnesota statute directs the routine fingerprinting and photographing of persons apprehended for crimes.[8] Its validity has apparently never been challenged. Other courts have required an accused to reveal portions of his anatomy in a variety of situations. A case squarely in point is State v. Miller, 71 N. J. L. 527, 60 A. 202. There a physician was permitted to testify to the results of an examination which disclosed wounds on the back of defendant's hand. In holding such testimony to be admissible, the New Jersey court stated (71 N. J. L. 533, 60 A. 204):

"* * * If the wound were upon the face or hand, or a part of his person exposed to common view, it would be absurd to say that testimony of what the wound presented to common observation was compelling a person on whom the wound was to be a witness against himself. I think it is equally absurd to say that the testimony of the observation of a wound in any part of the body, although obtained by a forcible removal of what concealed it, is to be rejected as produced by compelling a person to be a witness against himself."

A similar result has been reached in Neely v. United States (4 Cir.) 2 F. (2d) 849, 851; People v. Eberhard, 114 Cal. App. (2d) 133, 136, 249 P. (2d) 590, 592; Williams v. State, 231 Md. 83, 188 A. (2d) 543; and Commonwealth v. Tanchyn, 200 Pa. Super. 148, 156, 188 A. (2d) 824, 828. The use of a fluoroscope to establish the presence of a bag of heroin was approved by the Federal court in King v. United States (5 Cir.) 258 F. (2d) 754, 755; and the photograph of a defendant charged with rape, showing scratches on his face and taken without his permission, was held not to be a violation of immunity from self-incrimination in State v. Linebarger, 71 Idaho 255, 259, 232 P. (2d) 669, 672. A claim that taking photographs of scars on defendant's body over his objection for which he was required to disrobe was illegal and prejudicial was rejected in People v. Smith, 142 Cal. App. (2d) 287, 293, 298 P. (2d) 540, 543.[9]

---

[8] Minn. St. 626.39.

[9] See, also, Richardson, *Scientific Evidence in the Law,* 44 Ky. L. J.

Following what we regard as well-reasoned authority, we hold that this defendant was not denied his constitutional right against self-incrimination.

Finally, defendant seeks to exclude the results of his physical examination and X rays by invoking the statutory physician-patient privilege. Minn. St. 595.02(4) provides in part as follows:

"A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity; * * *."

It is evident from the record that when Dr. Nelson examined defendant he was not attending him in a professional capacity with a view to diagnosis and treatment. We therefore hold that the statute is not applicable and it was proper to disclose to the jury the results of the physical examination and the interpretation of the X rays. Defendant did not consult Dr. Nelson. On the contrary, the police brought defendant to the doctor to secure incriminating evidence against him, a situation which defendant clearly understood. The fact that surgery might have been recommended if the doctor had found a condition which put defendant's health in serious jeopardy did not, in our opinion, create the professional relationship which the statute intended to protect.

Where a medical examination is for some reason other than diagnosis and treatment, we have held the privilege does not obtain.[10] The rule is stated in 8 Wigmore, Evidence (McNaughton Rev.) § 2383, thus:

"The privilege is intended (and by most statutes is declared) to protect only those communications which are *necessary* for obtain-

---

277, 294; Morgan, *The Privilege Against Self-Incrimination*, 34 Minn. L. Rev. 1, 38; 18 Ga. B. J. 344; Annotation, 25 A. L. R. (2d) 1409.

[10]Cherpeski v. G. N. Ry. Co. 128 Minn. 360, 364, 150 N. W. 1091, 1092; Hierl v. McClure, 238 Minn. 335, 341, 56 N. W. (2d) 721, 724.

ing the benefits of the professional relation—in other words, for enabling the physician to prescribe remedies or relief."

Following the weight of authority we hold that no privileged professional relationship arises out of an examination of a person charged with a crime where it is understood and intended that the only purpose is to secure evidence against defendant for use at his trial.[11]

Affirmed.

[11]State v. Fouquette, 67 Nev. 505, 537, 221 P. (2d) 404, 421; Annotation, 107 A. L. R. 1499; see, also, 56 Nw. U. L. Rev. 268.