## STATE v. EUGENE RILEY.

226 N. W. 2d 907.

March 7, 1975—No. 44436.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Special Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,*

County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

SCOTT, JUSTICE.

Defendant was found guilty by a district court jury of aggravated rape, Minn. St. 609.291, and aggravated sodomy, Minn. St. 609.293, subd. 2, and sentenced by the presiding judge to a maximum indeterminate term of up to 30 years in the State Prison. He contends in this appeal from the judgment of conviction that there was insufficient evidence to convict and that the trial court committed prejudicial error in admitting into evidence testimony by police describing the appearance of defendant's penis, testimony which tended to corroborate the victim's testimony that defendant was the man who attacked her. We affirm.

Late in the afternoon of July 27, 1972, a man described as black, in his early twenties, about 5 feet 8 inches tall and somewhat heavyset, with slight facial acne and a medium-length Afro hair style, and wearing a brown long-sleeved studded shirt and tan pants with patch pockets, committed aggravated rape and aggravated sodomy upon the complainant, a single, 27-year-old teacher who had just returned from work to her St. Paul apartment. Immediately after her assailant left, complainant reported the incident to St. Paul police who arrived on the scene moments later. While the police officers were questioning complainant, another officer arrived on the the scene with a suspect he had just detained who apparently matched the description which first went out over police radio. Complainant stated definitely that this suspect was not her assailant. Approximately a half hour after the arrival of the officers and while being driven to the hospital, complainant observed, about eight blocks from her apartment, a group of three males, one of whom she told the police officers was her assailant. They drove by slowly and complainant repeated her positive identification, whereupon the police arrested defendant. Not only did complainant's earlier description of her

assailant's physical features fit defendant, but her description of his clothing was accurate as well.

Sergeant Cecil Westphal testified for the state, over objection by defendant, that after learning from the complainant the day after the incident that her assailant had unusual markings on the left side of the penis,[1] he took defendant from his cell to an interrogation room and asked him to lower his trousers; that defendant did so; and that he observed four small projections on the left side of defendant's penis about an inch from the tip.

The overriding issue in this case is adequately stated in defendant's brief as follows:

"Does an in-custody close range inspection of an accused's penis constitute a search within the meaning of the Fourth Amendment to the United States Constitution?"

Defendant essentially contends that this was a search under the Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment. He concludes that it was prejudicial error for the trial court to admit the evidence obtained from this warrantless police search of his private person. This court accepts the views expressed by Mr. Justice Powell in his concurring opinion in United States v. Robinson, 414 U. S. 218, 237, 94 S. Ct. 467, 494, 38 L. ed. 2d 427, 441 (1973), wherein he emphasized what he felt was the basic premise of the majority opinion in that decision:

"The Fourth Amendment safeguards the right of 'the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *.' These are areas of an individual's life about which he entertains legitimate expecta-

---

[1] Complainant testified that during the time that the defendant was holding her by her hair and pulling her head down over him, she observed sores or growths on the left shank of his penis, which he explained were birthmarks. She kept pulling her head back and tried to resist whenever she could, but feared that she would be killed if she resisted further.

tions of privacy. I believe that an individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person. Under this view the custodial arrest is the significant intrusion of state power into the privacy of one's person. If the arrest is lawful, the privacy interest guarded by the Fourth Amendment is subordinated to a legitimate and overriding governmental concern. No reason then exists to frustrate law enforcement by requiring some independent justification for a search incident to a lawful custodial arrest. This seems to me the reason that a valid arrest justified a full search of the person, even if that search is not narrowly limited by the twin rationales of seizing evidence and disarming the arrestee. The search incident to arrest is reasonable under the Fourth Amendment because the privacy interest protected by that constitutional guarantee is legitimately abated by the fact of arrest." [2]

Consistent with this rationale, there should no longer be any difference between searches of a defendant immediately incident in time to the custodial arrest and searches made of a defendant later during his custody. In either case, the significant intrusion is the fact of custody of defendant's person, and any warrantless

---

[2] See, also, State v. Emerson, 266 Minn. 217, 123 N. W. 2d 382 (1963), in which this court discussed authority for requiring an accused to reveal portions of his anatomy in a variety of situations. In Emerson, we cited State v. Miller, 71 N. J. L. 527, 60 A. 202 (1905), which allowed a physician to testify to the results of an examination which disclosed wounds on the back of defendant's hand. In holding such testimony admissible, the New Jersey Court of Errors and Appeals reasoned:

"* * * If the wound were upon the face or hand, or a part of his person exposed to common view, it would be absurd to say that testimony of what the wound presented to common observation was compelling a person on whom the wound was to be a witness against himself. I think it is equally absurd to say that the testimony of the observation of a wound in any part of the body, although obtained by a forcible removal of what concealed it, is to be rejected as produced by compelling a person to be a witness against himself." 71 N. J. L. 533, 60 A. 204.

search of the defendant during that custody would seem to be proper even absent some independent justification. Therefore, such a search, conducted where there existed overwhelming independent justification and where the facts established ample probable cause for defendant's arrest, was proper.

Accepting this constitutional concept, as we do, it becomes immaterial whether the trial court was correct in determining that this was not a search and only an observation by Sergeant Westphal. The only issue that develops is whether the state's failure to give notice as to this evidence, under State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. 2d 3 (1965), operated as a bar to the admission of this evidence.[3] We hold that in this case it did not. The test in cases of this sort is whether the state's failure prejudiced defendant. See, State v. Kluck, 299 Minn. 161, 217 N. W. 2d 202 (1974); State v. Doust, 285 Minn. 336, 173 N. W. 2d 337 (1969); State v. Fields, 279 Minn. 374, 157 N. W. 2d 61 (1968). We cannot conclude that defendant was prejudiced in any way by the lack of a timely Rasmussen notice. The record indicates that defendant was allowed to give a full explanation to the court of the facts concerning this matter and then waived any further hearing to more fully explore these facts.

Finally, we need not get into whether or not the facts show tacit consent by the defendant, nor discuss the defendant's contention that the evidence was insufficient to support the conviction. Suffice it to say, there is no merit whatsoever to these contentions.

Affirmed.

---

[3] In State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. 2d 3 (1965), this court declared that at the time of arraignment or as soon thereafter as possible, the state must notify the court that the state's case will include evidence obtained as a result of search or seizure, evidence derived from a search, or confessions, admissions, or evidence in the nature of a confession.