# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0076

State of Minnesota,
Respondent,

vs.

Ryan Mark Thompson,
Appellant.

**Filed December 28, 2015**
**Reversed**
**Smith, Judge**

Steele County District Court
File No. 74-CR-12-777

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Julia A. Forbes, Assistant County Attorney, Owatonna, Minnesota (for respondent)

Charles A. Ramsay, Daniel J. Koewler, Suzula R. Bidon, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Smith, Judge.

## S Y L L A B U S

1.      Charging a driver with violating Minn. Stat. § 169A.20, subd. 2 (2010) for refusing to submit to a urine test implicates a fundamental right because a warrantless search of the driver's urine would not have been constitutional under an exception to the warrant requirement.

2. When applied to the refusal of a warrantless urine test, Minn. Stat. § 169A.20, subd. 2 violates a driver's right to substantive due process under the United States and Minnesota Constitutions because it is not narrowly tailored to serve a compelling government interest.

**O P I N I O N**

**SMITH**, Judge

Appellant challenges his conviction of second-degree test refusal following his refusal to submit to a blood or urine test. We conclude that conducting a warrantless blood or urine test would not have been constitutional under an exception to the warrant requirement, charging appellant with criminal test refusal implicates his fundamental right to be free from unconstitutional searches, and the test-refusal statute as applied to warrantless blood and urine tests is not narrowly tailored to serve a compelling government interest. We therefore reverse appellant's conviction because the test-refusal statute violates appellant's right to substantive due process under the United States and Minnesota Constitutions.

**FACTS**

On April 13, 2012, an Owatonna police officer was sitting outside a bar at closing time when he saw a vehicle drive forward, jump a curb, and then stop quickly. After the vehicle backed up and exited the bar parking lot, it "cut the corner short" and drove over the center line. The officer conducted a traffic stop and identified the driver as appellant Ryan Thompson. The officer "detected an overwhelming odor of an alcoholic beverage

2

coming from the vehicle" and noticed that Thompson "had watery and glassy eyes." Thompson stated that he had consumed one beer.

The officer then asked Thompson to submit to field sobriety tests, which Thompson failed. Thompson also failed a preliminary breath test. The officer arrested Thompson and drove him to the Steele County Detention Center, where he read Thompson the implied-consent advisory. Thompson left a message for an attorney and "stated that he was done" using the telephone. The officer then completed reading the implied-consent advisory, and Thompson refused to take a blood or urine test.

Thompson was charged with second-degree test refusal, third-degree driving while under the influence, obstructing legal process, and driving over the centerline. At an omnibus hearing, Thompson challenged the constitutionality of the test-refusal statute, arguing that it violated his due-process rights and the unconstitutional-conditions doctrine. The district court concluded that the test-refusal statute is constitutional. To challenge the district court's ruling on appeal, Thompson submitted the second-degree test-refusal charge to the district court under Minn. R. Crim. P. 26.01, subd. 4. The other charges were dismissed. The district court found Thompson guilty of second-degree test refusal.

## ISSUE

Does the test-refusal statute violate appellant's right to substantive due process under the United States and Minnesota Constitutions by criminalizing his refusal to submit to a warrantless blood or urine test?

3

## ANALYSIS

Minnesota's test-refusal statute makes it a crime to refuse to submit to a chemical test of blood, breath, or urine in certain circumstances. Minn. Stat. § 169A.20, subd. 2. These circumstances include when an officer has probable cause to believe that a person was driving, operating, or physically controlling a motor vehicle while under the influence of alcohol and has read the person the implied-consent advisory. Minn. Stat. § 169A.51, subds. 1-2 (2010).

Thompson challenges the constitutionality of the test-refusal statute as applied to him.[1] "The constitutionality of a statute is a question of law that we review de novo." *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013) (quotation omitted). To successfully challenge a statute's constitutionality, "the challenger bears the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Merrill*, 450 N.W.2d 318, 321 (Minn. 1990).

### A. The Fourth Amendment

Because Thompson's due-process argument is based on a Fourth Amendment violation, we must first analyze whether a warrantless search would have been constitutional under the Fourth Amendment. *See Bernard*, 859 N.W.2d at 766. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const.

---

[1] Thompson argues in his reply brief that the test-refusal statute is unconstitutional on its face, but his principal brief argues that the statute is unconstitutional as applied to him. Generally, issues not raised or argued in an appellant's principal brief cannot be revived in a reply brief. *McIntire v. State*, 458 N.W.2d 714, 717 n.2 (Minn. App. 1990), *review denied* (Minn. Sept. 28, 1990). As in *Bernard*, we construe Thompson's argument as an as-applied challenge to the test-refusal statute. *See State v. Bernard*, 859 N.W.2d 762, 765 n.2 (Minn. 2015).

amend. IV; *see* Minn. Const. art. I, § 10. The collection and testing of both blood and urine is a search. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). "A warrantless search is generally unreasonable, unless it falls into one of the recognized exceptions to the warrant requirement." *Bernard*, 859 N.W.2d at 766. "The state bears the burden of establishing an exception to the warrant requirement." *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

Citing *Bernard*, the state argues that the search-incident-to-arrest exception applies here. The search-incident-to-arrest exception allows police "to conduct a full search of the person who has been lawfully arrested" and to search "the area within the immediate control of the arrestee." *Bernard*, 859 N.W.2d at 767-69 (quotation omitted). The exception traditionally seeks to protect arresting officers and to preserve any evidence that an arrestee might conceal or destroy. *Arizona v. Gant*, 556 U.S. 332, 338-39, 129 S. Ct. 1710, 1716 (2009). But the supreme court has determined that these concerns apply only to a warrantless search of the area around the arrestee, not to a search of the arrestee's body. *Bernard*, 859 N.W.2d at 768-69. In *Bernard*, the supreme court held that a warrantless *breath* test was "constitutional under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement." *Id.* at 772. The supreme court declined to address whether a warrantless blood or urine test would also be constitutional under this exception. *Id.* at 768 n.6.

Thompson argues that the search-incident-to-arrest exception cannot apply here because any search would have occurred well after his arrest at the traffic stop. But the timing is no different than in *Bernard*, where the driver was arrested, taken to a police

5

station, and read the implied-consent advisory before placing one phone call and refusing the breath test. *See id.* at 764-65. The timing of any potential search did not affect the supreme court's determination that the search-incident-to-arrest exception applied. *See id.* at 767. Similarly, the timing of any potential test here does not preclude the application of the search-incident-to-arrest exception. *See State v. Riley*, 303 Minn. 251, 254, 226 N.W.2d 907, 909-10 (1975) (explaining that there is no difference "between searches of a defendant immediately incident in time to the custodial arrest and searches made of a defendant later during his custody").

After the parties submitted their briefs, we released an opinion analyzing whether the search-incident-to-arrest exception applies to warrantless blood tests. In *State v. Trahan*, a driver was offered a blood or urine test, consented to a urine test, could not produce a sample, and then refused a blood test. 870 N.W.2d 396, 399 (Minn. App. 2015), *review granted* (Minn. Nov. 25, 2015). The driver pleaded guilty to first-degree test refusal regarding the blood test. *Id.* at 399-400. We concluded that a warrantless blood test could not be justified under the search-incident-to-arrest exception because "[a] blood draw is undeniably intrusive" and "[u]nlike breath, blood does not naturally and regularly exit the body." *Id.* at 401.

Thompson was offered both a blood test and a urine test and refused both tests. Because *Trahan* determined that a warrantless blood test would not have been constitutional under the search-incident-to-arrest exception, we must only determine the constitutionality of a warrantless urine test. *See id.* at 402 n.3 (rejecting consideration of this issue because the driver's guilty plea was based on his blood test refusal only).

6

We conclude that, as with a warrantless blood test, a warrantless urine test cannot be justified under the search-incident-to-arrest exception. "There are few activities in our society more personal or private than the passing of urine." *Skinner*, 489 U.S. at 617, 109 S. Ct. at 1413 (quotation omitted). Because a driver must produce a urine sample in front of an officer, a urine test is unquestionably more intrusive than a breath test. *See Bernard*, 859 N.W.2d at 768 n.6 (explaining that a breath test is less invasive than a blood or urine test). A urine test "intrudes upon expectations of privacy that society has long recognized as reasonable." *Skinner*, 489 U.S. at 617, 109 S. Ct. at 1413.

At oral argument, the state cited three cases discussed in *Bernard* to support its argument that a warrantless urine test would be constitutional under the search-incident-to-arrest exception. In *State v. Emerson*, medical professionals took X-rays and photographs of an arrestee and performed a medical examination. 266 Minn. 217, 218-19, 123 N.W.2d 382, 384 (1963). The supreme court determined that these actions did not violate the arrestee's due-process rights. *Id.* at 221, 123 N.W.2d at 385. In *Maryland v. King*, the United States Supreme Court upheld a warrantless buccal swab of an arrestee's cheek for DNA by jail officials, comparing it to fingerprinting and photographing an arrestee. 133 S. Ct. 1958, 1965, 1980 (2013). These cases are distinguishable by the much more invasive nature of a urine test. *See Skinner*, 489 U.S. at 617, 109 S. Ct. at 1413 (explaining that the passing of urine is generally private and that "its performance in public is generally prohibited by law as well as social custom" (quotation omitted)).

7

The state also cited *State v. Riley*, in which the supreme court determined that the search-incident-to-arrest exception justified a warrantless visual inspection of an arrestee's penis in a prison cell. 303 Minn. 251, 253-55, 226 N.W.2d 907, 909-10 (1975). But *Riley* is also distinguishable. In *Riley*, the officer conducted a brief visual inspection after the victim told police that "her assailant had unusual markings on the left side of his penis." *Id.* at 253, 266 N.W.2d at 908-09. In contrast to the brief nature of this inspection, producing a urine sample can take a long time due to the anxiety and stress of the situation and a person can remain exposed to the officer for a considerable length of time. *See State, Dep't of Highways v. Lauseng*, 289 Minn. 344, 345 n.1, 183 N.W.2d 926, 926-27 n.1 (1971) (stating that an arrestee may be unable to produce urine due to "the emotional disturbance created by arrest or accident" (quotation omitted)); *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010) (commenting that an arrestee was unable to produce a urine sample after several glasses of water and three opportunities to do so in more than one hour), *review denied* (Minn. Mar. 15, 2011).

Moreover, the visual inspection in *Riley* was performed for the limited purpose of identifying whether the suspect had the "unusual markings" identified by the victim. *See* 303 Minn. at 253, 266 N.W.2d at 908-09. The supreme court explained that there was both "overwhelming independent justification" for the search and "ample probable cause" for the arrest. *Id.* at 255, 266 N.W.2d at 910. Unlike the identification rationale in *Riley*, a urine sample is used to collect evidence against the arrestee. *See* Minn. Stat. § 169A.45, subd. 1 (2010) (stating that the results of a blood, breath, or urine test may be admitted in a prosecution for driving while impaired). In addition, a urine test "can

reveal a host of private medical facts," including whether someone is "epileptic, pregnant, or diabetic." *Skinner*, 489 U.S. at 617, 109 S. Ct. at 1413. Although officers do not analyze an arrestee's urine to learn sensitive medical information, we cannot ignore the potentially broad scope of a urine test. *See Bernard*, 859 N.W.2d at 771 n.8 (stating that a breath test reveals only "the level of alcohol in the arrestee's bloodstream").

We acknowledge that a urine test is less intrusive than a blood draw, which requires inserting a needle into the arrestee's skin. *See Trahan*, 870 N.W.2d at 401. But a urine test is far more intrusive than a breath test and other searches that have been upheld under the search-incident-to-arrest exception. *See Bernard*, 859 N.W.2d at 772 (breath); *State v. Bonner*, 275 Minn. 280, 287, 146 N.W.2d 770, 775 (1966) (photographs and fingerprints); *Emerson*, 266 Minn. at 221, 123 N.W.2d at 385 (photographs, X-rays, and medical examination); *see also King*, 133 S. Ct. at 1980 (buccal swab of cheek for identification under reasonableness-in-the-circumstances standard). In addition, our legislature treats both blood and urine tests differently than breath tests. *See* Minn. Stat. § 169A.51, subd. 3 (2010) (requiring an officer to offer an alternative test before a driver can be charged with refusing a blood or urine test but not a breath test). Because a warrantless search of Thompson's urine would invade one of the most private of human activities, *see Skinner*, 489 U.S. at 617, 109 S. Ct. at 1413, it would not have been constitutional under the search-incident-to-arrest exception to the warrant requirement, *see Trahan*, 870 N.W.2d at 402.

9

**B. Substantive Due Process**

Having concluded that no exception to the warrant requirement would have justified a warrantless search of Thompson's blood or urine, we next consider Thompson's substantive due-process argument. *See Trahan*, 870 N.W.2d at 403. The Due Process Clauses of the United States and Minnesota Constitutions prohibit arbitrary and wrongful government actions, "regardless of the fairness of the procedures used to implement them." *Bernard*, 859 N.W.2d at 773 (quotation omitted); *see* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. If the challenged statute implicates a fundamental right, it is subject to strict-scrutiny review. *See In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 133 (Minn. 2014) (applying strict scrutiny because the statute implicated a fundamental right, the right to parent). But if the statute does not implicate a fundamental right, it is subject to rational-basis review. *Bernard*, 859 N.W.2d at 773.

"Every citizen has a fundamental right to be free from unreasonable searches." *Trahan*, 870 N.W.2d at 403. In *Trahan*, we determined that the driver's fundamental right to be free from unreasonable searches was implicated because a warrantless blood test would have been unconstitutional. *Id.* at 404. As in *Trahan*, because a warrantless search of Thompson's blood or urine would have been unconstitutional, Thompson's fundamental right to be free from unreasonable searches is implicated. *See id.*

We therefore apply strict-scrutiny review to assess the constitutionality of the test-refusal statute. *See R.D.L.*, 853 N.W.2d at 133; *Trahan*, 870 N.W.2d at 404. "Once a statute is subject to strict scrutiny, it is not entitled to the usual presumption of validity."

10

*R.D.L.*, 853 N.W.2d at 133 (quotation omitted). The state must show that the statute is "narrowly tailored to serve a compelling government interest." *Id.*

As noted in *Bernard* and *Trahan*, the state has a compelling interest in keeping impaired drivers off its roads. *See Bernard*, 859 N.W.2d at 773; *Trahan*, 870 N.W.2d at 404. But in *Trahan*, we determined that criminalizing the refusal of a warrantless blood test was not narrowly tailored because the state had "other viable options to address drunk driving," including (1) offering a breath test and charging a driver with refusing that test; (2) prosecuting the driver without measuring the alcohol concentration; and (3) securing a search warrant. 870 N.W.2d at 404; *see Missouri v. McNeely*, 133 S. Ct. 1552, 1562 (2013) (suggesting that, today, search warrants are often easy to obtain via telephone or electronic communication). Because these alternatives are similarly available in the context of a warrantless urine test, we conclude that the test-refusal statute is not narrowly tailored to serve the state's compelling interest in keeping its roads safe. *See Trahan*, 870 N.W.2d at 404. The test-refusal statute therefore fails strict scrutiny as applied to Thompson, and Thompson's right to substantive due process under the United States and Minnesota Constitutions was violated. *See id.*

The state suggests that we should nevertheless apply the good-faith exception to the exclusionary rule to affirm Thompson's conviction. The supreme court recently adopted the good-faith exception in the narrow situation where "law enforcement acts in objectively reasonable reliance on binding appellate precedent." *State v. Lindquist*, 869 N.W.2d 863, 876 (Minn. 2015). In *Trahan*, we declined to apply the good-faith exception to affirm the driver's conviction for refusing a blood test, in part because the

exception applies only to Fourth Amendment violations and no unconstitutional search actually occurred. *See* 870 N.W.2d at 405; *see also Lindquist*, 869 N.W.2d at 876. Accordingly, we also decline to apply the good-faith exception to affirm Thompson's conviction for refusing blood and urine tests.

Finally, because we reverse Thompson's conviction on due-process grounds, we need not address Thompson's other arguments regarding the constitutionality of the test-refusal statute.

## D E C I S I O N

The test-refusal statute violates appellant's right to substantive due process under the United States and Minnesota Constitutions by criminalizing his refusal to submit to a warrantless blood or urine test. We therefore reverse appellant's conviction.

**Reversed.**