OPINION
HALBROOKS, Judge.
On remand from the Minnesota Supreme Court in this combined direct and postconviction appeal, appellant challenges his conviction of first-degree test refusal, arguing that criminalizing refusal to submit to a warrantless blood test is unconstitutional under the rule announced in Missouri v. McNeely, — U.S.-, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). Because we conclude that conducting a warrantless blood test would have been unconstitutional, charging appellant with a crime based on his refusal to submit to the test implicates his fundamental right to be free from unconstitutional searches. And because the test-refusal statute as applied is not narrowly tailored to serve a compelling government interest, it fails strict scrutiny and violates appellant’s right to due process under the United States and Minnesota Constitutions. Accordingly, we reverse and remand for withdrawal of appellant’s guilty plea.[1]
FACTS
Just after midnight on October 24, 2012, a Ramsey County sheriffs deputy stopped appellant Todd Trahan based on his erratic driving and speed. When the deputy approached the car, Trahan was screaming that he would be “looking at doing 67 months.” The deputy observed that Tra-han was agitated, smelled strongly of alcohol, had red and watery eyes, and had difficulty standing up. A check of Tra-han’s driving record revealed that his license was cancelled as inimical to public safety based on multiple previous driving-while-impaired (DWI) convictions. Because Trahan was “so agitated and unpredictable,” the deputy did not administer field sobriety tests.
At the jail, Trahan was read the implied-consent advisory, and he asked for his cell phone to contact an attorney. At 1:53 a.m., after making several phone calls, Trahan stated that he was finished with the phone. The deputy offered Trahan a blood test or a urine test, and Trahan chose urine. The parties’ accounts differ on Trahan’s compliance with providing a urine sample. Trahan contends that he provided a valid urine sample, but the deputy deemed his conduct a refusal.[2] The deputy then asked Trahan to take a blood test, which he refused.
The state charged Trahan with first-degree refusal to submit to a chemical test in violation of Minn.Stat. § 169A.20, subd. 2. The prosecutor agreed to a sentence at the low end of the presumptive range, and Trahan pleaded guilty. Trahan testified in his plea colloquy that he had provided an adequate urine sample, but acknowledged that the deputy stated that the sample did not “look right” and that Trahan “must have tampered with it.” Trahan further *400 testified, “I did refuse the blood test, so 1⅛ guilty of that.” The district court sentenced Trahan to 60 months in prison, a downward departure from the presumptive sentencing range of 65-84 months.
Trahan then filed a direct appeal but requested a stay pénding postconviction proceedings, which we granted. In his postconviction petition, Trahan argued that (1) his plea was invalid because the factual basis did not support á refusal to test and (2) the test-refusal'statute is unconstitutional because it violates due process and the doctrine of unconstitutional conditions. The district court denied Trahan’s petition, determining that (1) Trahan’s acknowledged refusal to submit to an alternative test requested by the police supported his guilty plea and (2) Trahan did not meet his burden of establishing the unconstitutionality of the test-refusal statute beyond a reasonable doubt. After reinstating Tra-han’s appeal, we affirmed. State v. Tra-han, No. A13-0931, 2014 WL 4798876 (Minn.App. Sept. 29, 2014).
On December 16,, 2014, the supreme court granted Trahan’s petition for further review with respect to the.constitutionality of the test-refusal statute and stayed review pending its decision in State v. Bernard, 859 N.W.2d 762 (Minn.2015). On April 28, 2015, the supreme court reversed our'holding on the constitutionality of the test-refusal statute and remanded to this court for reconsideration of that issue in light - of Bernard. The parties then submitted supplemental briefing. On remand, Trahan focuses his constitutional argument on substantive due process.
ISSUE
Does the test-refusal statute violate appellant’s right to due process by criminalizing his refusal to submit to a warrantless test of his blood?
ANALYSIS
Minnesota’s test-refusal statute makes it a crime to refuse to submit to a chemical test of blood, breath, or urine administered to detect the presence of alcohol under certain conditions. Minn.Stat. § 169A.20, subd. 2. These conditions include when the person has been lawfully placed under arrest for driving while impaired and an officer has read the person the implied-consent advisory. Minn.Stat. §§ 169A.20, subd. 2, .51, subds. 1-2 (2012). Trahan argues that the test-refusal statute as applied to him violates his right to substantive due process because it criminalizes his refusal of an unconstitutional search of his blood.
A. The Fourth Amendment
Because Trahan’s due-process argument is premised on a Fourth Amendment violation, we first consider whether' a warrant-less blood test would have been reasonable under the Fourth Amendment. See Bernard, 859 N.W.2d at 766. A blood draw is a search. See Skinner v. Ry. Labor Execs.’ Ass’n, 489 U.S. 602, 616-17, 109 S.Ct. 1402, 1412, 103 L.Ed.2d 639 (1989); State v. Brooks, 838 N.W.2d 563, 568 (Minn. 2013), cert. denied, — U.S. -, 134 S.Ct. 1799, 188 L.Ed.2d 759 (2014). The Fourth Amendment to the United States Constitution provides: “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.... ” U.S. Const, amend. IV.
“The ultimate measure of a permissible government search under the Fourth Amendment is reasonableness.” Bernard, 859 N.W.2d at 766 (quotation omitted). “A warrantless search is generally unreasonable, unless it falls into one of the recognized exceptions to the warrant *401 requirement.” Id. It is the state’s burden to establish an exception to the warrant requirement. State v. Ture, 632 N.W.2d 621, 627 (Minn.2001). When evaluating whether a warrant exception applies to a given search, courts assess “on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.” Riley v. California, — U.S. -, 134 S.Ct. 2473, 2484, 189 L.Ed.2d 430 (2014) (quotation omitted). Two exceptions to the warrant requirement — search incident to a lawful arrest and exigent circumstances — are' relevant to our analysis.
1. Search Incident to Arrest
“A search incident to a lawful arrest is a well-recognized exception to the warrant requirement under the Fourth Amendment.” Bernard, 859 N.W.2d at 766. The search-incident-to-arrest exception historically derives from concerns over officer safety and evidence preservation. See Arizona v. Gant, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009). This exception permits police “to conduct a ‘full search of the person’ who has been lawfully arrested.” Bernard, 859 N.W.2d at 767 (quoting United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973)).
Our supreme court recently applied the search-incident-to-arrest exception to conclude that a warrantless breath test would be constitutional. Id. at 772. The supreme court carefully limited its conclusion to breath tests:
[T]he question of a blood or urine, test incident to arrest is not before us, and we express no opinion as to whether a blood or urine test of a suspected drunk driver could be justified as a search incident to arrest. The differences between a blood test and a breath test are material, and not the least of those differences is the less-invasive nature of breath testing.
Id. at 768 n. 6.
Trahan argues, and the state does not dispute, that a warrantless blood test would not be justified under the search-incident-to-arrest exception. We agree. A blood draw is undeniably intrusive: a needle is inserted into the skin to extract blood. In Schmerber v. California, the United States Supreme Court explicitly recognized that the search-incident-to-arrest exception has “little applicability with respect to searches involving intrusions beyond the body’s surface.” 384 U.S. 757, 769, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966). Again in McNeely, although not explicitly addressing the .search-incident-to-arrest exception, the Supreme Court reiterated the significance of review by a “neutral and detached magistrate” before “invad[ing] another’s body in search of evidence of guilt.” 133 S.Ct. at 1558 (quotation omitted).
As Bernard, Schmerber, and McNeely highlight, blood draws are serious intrusions into the human body that implicate a person’s “most personal and deep-rooted expectations of privacy.” Id. (quotation omitted). Unlike breath, blood does not naturally and regularly exit the body. And under Minnésota’s DWI law, a blood draw can only be performed by a qualified medical professional. Minn.Stat. § 169A.51, subd. 7(a) (2012). This physical penetration makes a blood test far more intrusive than a breath test or other searches of the person- that Minnesota courts have upheld as searches incident to a valid arrest. See Bernard, 859 N.W.2d at 767 (listing searches of the person justified under the search-incident-to-arrest exception).
*402 Because a blood test here would have been highly intrusive, we conclude that a warrantless search of Trahan’s blood would not have been constitutional under the search-incident-to-arrest exception to the Fourth Amendment’s warrant requirement.[3]
2. Exigent Circumstances
We next consider whether police could have conducted a warrantless search of Trahan’s blood under the exigent-circumstances exception to the warrant requirement. The relevant inquiry in applying the exigent-circumstances exception “is whether, under all of the facts reasonably available to the officer at the time of the search, it was objectively reasonable for the officer to conclude that he or she was faced with an emergency, in which the delay necessary to obtain a warrant would significantly undermine the efficacy of the search.” State v. Stavish, 868 N.W.2d 670, 676-77 (Minn.2015).
In Schmerber, the Supreme Court applied the exigency exception to a warrant-less, nonconsensual blood draw from an injured driver who was suspected of driving under the influence. 384 U.S. at 770-71, 86 S.Ct. at 1835-36. The Supreme Court held that the warrantless blood draw was justified because exigent circumstances existed, particularly because “time had to be taken to bring the accused to a hospital and to investigate the scene of the accident” and police had “no time to seek out a magistrate and secure a warrant.” Id. at 770-71, 86 S.Ct. at 1836.
The Supreme Court revisited the exigency exception in the context of noncon-sensual blood draws in McNeely, holding that “in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to'justify conducting a blood test without a warrant.” 133 S.Ct. at 1568. Instead, the Supreme Court concluded that the natural dissipation of alcohol was a factor that could support a finding of exigent circumstances and that exigency “must be determined case by case based on the totality of the circumstances.” Id. at 1556, 1563. The Supreme Court was not asked to decide in McNeely whether the totality of the circumstances of that case would justify a warrantless, nonconsensual blood draw under the exigent-circumstances exception. Id. at 1567.
Our supreme court recently addressed the exigency exception in the context of a warrantless blood test of a suspected drunk driver and concluded that the search was reasonable under the totality of the circumstances. Stavish, 868 N.W.2d at 676-679. In Stavish, police had reason to believe that the driver of a vehicle involved in a rollover crash had consumed alcohol and that alcohol had contributed to the crash. Id. It was therefore important to draw his blood within the two-hour statutory time frame to ensure the reliability and admissibility of the evidence. Id. (citing Minn.Stat. § 169A.20, subd. 1(5) (2012) (providing for measurement of alcohol concentration within two hours of driving)). The driver had sustained serious injuries requiring emergency medical treatment and would potentially be airlifted to a different medical center. Id. Because the driver’s “medical condition and need for treatment rendered his future availability for a blood draw uncertain,” our supreme *403 court concluded that “it was objectively reasonable for [the officer] to conclude that he was faced with an emergency in which the delay necessary to obtain a warrant threatened the destruction of evidence.” Id. Exigent circumstances therefore justified the warrantless blood draw. Id.
Here, Trahan’s future availability for a blood draw was not in question. Rather, the “exigency” was the expiration of the statutory time frame while Trahan was arrested, taken to the jail, read the implied-consent advisory, made phone calls, and produced a questionable urine sample. The state argues that under the particular facts of this case, exigent circumstances would have justified a warrantless blood test. We disagree.
Trahan’s lack of cooperation throughout the process, while understandably frustrating to police, simply did not create an exigency. The exigent circumstances in Schmerber and Stavish prevented police from seeking, or delaying the blood draw to secure, a search warrant. See Schmerber, 384 U.S. at 770-771, 86 S.Ct. at 1836; Stavish, 868 N.W.2d at 676-679. In contrast, the totality of the circumstances here shows no emergency that diminished the likelihood that a valid blood test could be performed after securing a warrant.
The circumstances here are more akin to a routine impaired-driving arrest: the record indicates that Trahan was agitated and difficult. These circumstances fall within “those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn.” McNeely, 133 S.Ct. at 1561. Because no exigency would have prevented police from seeking a warrant before conducting a blood test, we conclude that a warrantless blood test would not have been constitutional under the exigent-circumstances exception to the Fourth Amendment’s warrant requirement.
B. Substantive Due Process
Having determined that a war-rantless search of Trahan’s blood would not have been constitutional under the search-incident-to-arrest or exigent-circumstances exceptions to the Fourth Amendment’s warrant requirement, we next turn to Trahan’s substantive due-process challenge to the test-refusal statute. “The constitutionality of a statute is a question of law that we review de novo.” State v. Ness, 834 N.W.2d 177, 181 (Minn. 2013) (quotation omitted).
The Due Process Clauses of the United States and Minnesota Constitutions prohibit the state from “depriving] any person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV, § 1; see also Minn. Const, art. I, § 7. The Due Process Clause protects against government infringement on certain fundamental rights, “regardless of the procedures provided, unless the infringement is narrowly tailored to serve a compelling state interest.” Chavez v. Martinez, 538 U.S. 760, 775, 123 S.Ct. 1994, 2005, 155 L.Ed.2d 984 (2003). Fundamental rights and liberties are “deeply rooted in this Nation’s history and tradition and implicit in the concept of ordered liberty.” Id. (quotations omitted).
Every citizen has a fundamental right to be free from unreasonable searches. U.S. Const, amend. IV; Minn. Const, art. I, § 10; see also New York v. Class, 475 U.S. 106, 123, 106 S.Ct. 960, 970-71, 89 L.Ed.2d 81 (1986) (“The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. This fundamental right is preserved by a requirement that searches be conducted *404 pursuant to a warrant issued by an independent judicial officer.” (quotations omitted)). Because a warrantless search of Trahan’s blood would have been unconstitutional under these circumstances, Tra-han’s fundamental right to be free from unreasonable searches is implicated. 'Cf Bernard, 859 N.W.2d at 778 (“Having decided that the search of Bernard’s breath would have been constitutional, we find no fundamental right at issue here, as Bernard does not have a fundamental right to refuse a constitutional search.”).
We therefore subject the test-refusal statute to strict scrutiny. When a statute is subject to strict scrutiny, it is not entitled to any presumption of validity. In re Welfare of Child of R.D.L., 858 N.W.2d 127, 133 (Minn.2014) (applying strict-scrutiny review to termination-of-parental-rights statute because right to parent is a fundamental right). Rather, the state must meet a heavy burden of showing that the statute is narrowly tailored to serve a compelling government interest. Id.
It, is well settled that the state has a compelling interest in highway safety that justifies efforts to keep impaired drivers off the road. . See Bernard, 859 N.W.2d ■ at 773. This interest is substantial. “Indeed, 30 percent of traffic deaths in Minnesota in 2013 were alcohol-related.” Id. But to survive strict scrutiny, the test-refusal statute — to the extent it criminalizes the refusal to submit to a warrantless blood test — must also be narrowly tailored. A narrowly tailored law is “neither overin-clusive nor underinclusive; rather, it must be precisely tailored to serve the compelling state interest.” R.D.L., ‘853 N.W.2d at 135 (quotation omitted).
The state has other viable options to address drunk driving. Police may offer a breath test to a suspected drunk driver and then, if the test is refused, the ■ state may charge the person with the crime of test refusal. Bernard, 859 N.W.2d at 774. The state may'also prosecute a driver for driving under the influence without measuring the alcohol concentration or amount of controlled substances in a person’s blood. See Minn.Stat. § 169A.20, subd. l(l)-(2) (2014). And when time allows, police can secure a search warrant to test the person’s blood.[4] With a valid warrant in place (or an exception to the warrant requirement), the requested test would be a constitutionally reasonable search. U.S. Const, amend. IV; Minn. Const, art. I, § 10. Charging a suspected drunk driver ■with refusing a constitutional search does not offend due process. Bernard, 859 N.W.2d at 772-73.
We conclude that criminalizing the refusal to submit to a warrantless blood test “relates to the state’s ability to prosecute drunk drivers and keep Minnesota roads safe,” Bernard, 859 N.W.2d at 774, but it is not precisely tailored to serve that .compelling state interest. It therefore fails strict-scrutiny review.
We recognize that the available alternatives may not be as efficient as the current procedure under the test-refusal statute. But these alternatives serve the state’s compelling interest in securing the safety . of its roadways without infringing on a driver’s fundamental right to refuse an unreasonable search of his blood. Because the. test-refusal statute as applied fails strict scrutiny, Trahan’s right to due process under the Minnesota and United States Constitutions was violated.
*405 The state urges us to affirm Trahan’s conviction by applying the good-faith' exception to the exclusionary rule that our supreme court recently adopted in State v. Lindquist, 869 N.W.2d 863, 876 (Minn. 2015). We decline to do so.
The constitutionality of the test-refusal statute depends in part on whether a warrantless, noncónsensual search would have violated the Fourth Amendment. Bernard, 859 N.W.2d at 772. The exclusionary rule is a remedy, “which is a separate, analytically distinct issue from whether a constitutional violation occurred.” Lindquist, 869 N.W.2d at 872 (quotation omitted). And Minnesota’s recently adopted good-faith exception to the exclusionary rule is a narrow exception. Id. at 876. We decline to extend the Bernard analysis to the admissibility of evidence that could have been collected in an unconstitutional search that did not occur.
DECISION
Because the test-refusal statute as applied to appellant violates his right to substantive due process by criminalizing his refusal of an unconstitutional search, appellant’s conviction must be reversed.
Reversed and remanded.

. We note that neither Minn.Stat. § 609.035 (2012) nor the double-jeopardy clause bars retrial under an amended complaint. State v. Schmidt, 612 N.W.2d 871, 876 (Minn.2000).

. According to the complaint, after several attempts, Trahan failed to provide a sufficient urine sample, and instead put water from the sink into the sample bottle.

. The state urges us to conclude that Trahan refused the urine test by conduct and that a urine test would have been constitutional as a search incident to arrest. We decline to consider on this record whether a nonconsensual urine test would have been constitutional because the factual basis for Trahan's guilty plea does not establish the elements of first-degree test refusal in that regard.

. We note that procedural rules permit search ■ warrants to be secured remotely under certain conditions. See Minn. R.Crim. P. 36.01-.08.