*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0917**

State of Minnesota,
Respondent,

vs.

Hobart Alvin Huffman,
Appellant.

**Filed May 2, 2016**
**Affirmed in part and reversed in part**
**Smith, John, Judge**[*]

Beltrami County District Court
File No. 04-CR-14-2720

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Annie Claesson-Huseby, Beltrami County Attorney, Katherine D. Galler, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Smith, John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We reverse appellant Hobart Alvin Huffman's conviction of second-degree driving while impaired (DWI), Minn. Stat. §§ 169A.20, subd. 2, .25, subd. 1(b) (2014), because as applied the statute is unconstitutional. We affirm Huffman's conviction of child endangerment, Minn. Stat. § 609.378, subd. 1(b) (2014), because there was sufficient evidence to support the guilty verdict and the district court did not plainly error in the admission of opinion evidence.

## FACTS

Law enforcement was called to respond to a report that a vehicle was swerving between lanes on a highway. Bemidji Police Officer Ryan Riley located the vehicle "driving very slowly, about 15 miles per hour, on the shoulder" of the highway with "a very low tire." He initiated a traffic stop and made contact with Huffman, the vehicle's driver. Officer Riley initially observed a male seated in the vehicle's front passenger seat, a female seated in the backseat on the passenger side, and three tires stacked on the seat beside the female. As Officer Riley spoke to Huffman, he noticed that Huffman "didn't answer my questions very clearly. And he spoke about things that I wasn't asking about, and his conversation kind of trailed off at times." Officer Riley asked whether Huffman was under the influence, and Huffman responded, "Yes. I use Suboxone, because Suboxone is used on the long road of recovery from Oxycodone." Officer Riley was aware that Suboxone is a controlled substance.

Other officers arrived on the scene, including Bemidji Police Investigator Heather Holden and Minnesota State Troopers Scott Mattfield and Kyle Goodwin. Investigator Holden noticed that Huffman's "speech seemed nonsensical. He wasn't making sense, and he was trailing off as he was speaking to other officers." Trooper Goodwin noticed "a slowness about [Huffman], a slow stagger. Also noticed his eyes were red, bloodshot. And I also noticed as other people were talking to him I could overhear his voice coming back very slow and seemed to have to think about his answers for an extended period of time." The officers eventually observed a child seated on the floor of the vehicle between the female passenger's legs. The child was Huffman's seven-year-old daughter.

Huffman cooperated with field sobriety testing and a preliminary breath test, and the testing led Officer Riley and Trooper Mattfield to believe that Huffman was under the influence of a controlled substance. Officer Riley placed Huffman under arrest and transported him to a hospital, where he read Huffman the implied-consent advisory. Huffman asked to speak with an attorney and was given a telephone, a directory, and time to contact an attorney, but he did not make telephone calls. Officer Riley then asked whether Huffman would take a blood or urine test, and Huffman responded that he would take a test after talking to an attorney. Officer Riley determined that Huffman had unreasonably delayed the test and deemed it a refusal. Huffman was transported to jail, where packages of Suboxone were discovered in his wallet.

Huffman was charged with child endangerment and second-degree DWI for refusing a chemical test. He challenged the constitutionality of the test-refusal statute

3

during an omnibus hearing, and the district court ruled that the statute is constitutional. A jury found Huffman guilty of the charged offenses.

## D E C I S I O N

## I.

Huffman argues that his test-refusal conviction must be reversed because the test-refusal statute as applied in this case violates his right to substantive due process. The constitutionality of a statute is reviewed de novo. *State v. Melchert-Dinkel*, 844 N.W.2d 13, 18 (Minn. 2014). The United States and Minnesota Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. The taking of a blood or urine sample is a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). "Except in certain well-defined circumstances," a search is unreasonable unless conducted pursuant to a warrant issued upon probable cause. *Id.* at 619, 109 S. Ct. at 1414. One of the well-defined exceptions to the warrant requirement is a search incident to a lawful arrest. *State v. Bernard*, 859 N.W.2d 762, 766 (Minn. 2015), *cert. granted*, 136 S. Ct. 615 (2015).

The Minnesota Supreme Court has held that a warrantless breath test would be permissible as a search incident to a lawful arrest and that the criminalization of refusal to submit to a breath test does not violate a defendant's right to substantive due process. *See id.* at 772, 774. But Huffman was offered a blood or urine test and was not offered a breath test. *See id.* at 768 n.6 (declining to address whether warrantless blood or urine test would be justified as search incident to arrest). We recently concluded that a warrantless blood

4

test would not be permissible as a search incident to a lawful arrest because a blood draw is a "serious intrusion[] into the human body that implicate[s] a person's 'most personal and deep-rooted expectations of privacy,'" and, "[u]nlike breath, blood does not naturally and regularly exit the body." *State v. Trahan*, 870 N.W.2d 396, 401-02 (Minn. App. 2015) (quoting *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013)), *review granted* (Minn. Nov. 25, 2015). Similarly, we recently concluded that a warrantless urine test would not be permissible as a search incident to a lawful arrest because a urine test "invade[s] one of the most private of human activities." *State v. Thompson*, 873 N.W.2d 873, 879 (Minn. App. 2015) (citing *Skinner*, 489 U.S. at 617, 109 S. Ct. at 1413), *review granted* (Minn. Feb. 24, 2016). We stated that, without another applicable exception to the warrant requirement, criminally charging the defendants in *Trahan* and *Thompson* with test refusal implicated the fundamental right to be free from unreasonable searches and the strict scrutiny given to a deprivation of a fundamental right. *Id.* at 879-80; *Trahan*, 870 N.W.2d at 403-04. And we determined that criminalizing the refusal of a warrantless blood or urine test is not narrowly tailored to the state's compelling interest to keep impaired drivers off of roads. *Trahan*, 870 N.W.2d at 404 (stating that "other viable options" to address impaired driving include offering a breath test and charging the driver if that test is refused, prosecuting the driver for DWI without a chemical test, and securing a search warrant for a test); *see also Thompson*, 873 N.W.2d at 880. We therefore determined in each case that the test-refusal statute was unconstitutional as applied and reversed the defendant's test-refusal conviction. *Thompson*, 873 N.W.2d at 880; *Trahan*, 870 N.W.2d at 405.

*Trahan* and *Thompson* compel the same result in this case. The state does not contend that an exception to the warrant requirement other than a search incident to arrest applies. Absent an exception to the warrant requirement, a warrantless blood or urine test would have been unreasonable, and Huffman had a fundamental right to refuse the offered tests. Because the test-refusal statute does not survive strict scrutiny, the statute is unconstitutional as applied to Huffman, and his conviction of second-degree DWI for refusing a chemical test must be reversed. Because we reverse the test-refusal conviction, we need not address Huffman's argument that the jury was improperly instructed on an element of the crime of test refusal.

## II.

Huffman argues that witnesses provided inadmissible opinion testimony related to the charge of child endangerment. He did not object to the testimony during trial, and we therefore use plain-error analysis to address his argument. *See Gulbertson v. State*, 843 N.W.2d 240, 248 (Minn. 2014). Plain-error analysis requires an appellant to show an error that is plain and that affected his substantial rights. *State v. Campbell*, 861 N.W.2d 95, 101 (Minn. 2015). If this is shown, the appellate court "must determine whether the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted).

"An error is plain if it is clear or obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014). "Testimony in the form of an opinion or inference

6

otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Minn. R. Evid. 704.

> If the witness is qualified and the opinion would be helpful to or assist the jury . . . the opinion testimony should be permitted. In determining whether or not an opinion would be helpful or of assistance . . . a distinction should be made between opinions as to factual matters, and opinions involving a legal analysis or mixed questions of law and fact. Opinions of the latter nature are not deemed to be of any use to the trier of fact.

Minn. R. Evid. 704 1977 comm. cmt.; *see also State v. Yang*, 774 N.W.2d 539, 556 (Minn. 2009) (stating that, under rule 704 "helpfulness test," supreme court has "not allowed ultimate conclusion testimony which embraces legal conclusions or terms of art or which simply tells the jury what conclusion to reach" (quotations omitted)).

Investigator Holden testified that Huffman's daughter was "wedged behind . . . the front seat passenger and the rear on the floor boards between the adult female occupant's legs and the front seat." The prosecutor then asked whether Investigator Holden "fe[lt] that the child was safe in this position," and she responded, "No, I did not." Trooper Mattfield testified that Huffman's daughter was "sitting on the floor boards in the back" of the vehicle and was not wearing a seatbelt. The prosecutor then asked whether Trooper Mattfield thought "that was a safe place for a child to be," and he responded, "No." Huffman contends that the admission of opinion testimony that his daughter was not in a safe position was plain error because the opinions resolved an ultimate issue to be decided by the jury. He further contends that either the word "safe" is a term of art or the opinions as to his daughter's safety were legal conclusions.

7

Huffman was convicted of child endangerment under Minn. Stat. § 609.378, subd. 1(b), which provides that "[a] parent, legal guardian, or caretaker who endangers the child's person or health by: (1) intentionally or recklessly causing or permitting a child to be placed in a situation likely to substantially harm the child's physical, mental, or emotional health or cause the child's death . . . is guilty of child endangerment . . . ." The ultimate issue to be decided by the jury was not just whether Huffman's daughter was in an unsafe situation. Rather, the jury was required to determine whether his daughter was "in a situation likely to substantially harm [her] physical, mental, or emotional health or cause [her] death." *See* Minn. Stat. § 609.378, subd. 1(b)(1). Even if the officers' testimony had embraced an ultimate issue to be decided by the jury, Huffman provides no support for his assertion that the testimony involved either a legal conclusion or a term of art. Huffman has not shown that the admission of the officers' testimony was error, and we therefore need not address the remaining steps of plain-error analysis.

## III.

Huffman challenges the sufficiency of the evidence for his conviction of child endangerment. An appellate court examining the sufficiency of the evidence "carefully examine[s] the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015), *cert denied*, 136 S. Ct. 509 (2015). The appellate court "view[s] the evidence presented in the light most favorable to the verdict, and assume[s] that the [jury] disbelieved any evidence that conflicted with the verdict." *Id.*

8

As stated above, a parent is guilty of child endangerment if he "endangers [his] child's person or health by: (1) intentionally or recklessly causing or permitting [the] child to be placed in a situation likely to substantially harm the child's physical, mental, or emotional health or cause the child's death." Minn. Stat. § 609.378, subd. 1(b). Huffman challenges the sufficiency of the evidence that his daughter was in a situation "likely to substantially harm" her. "The word 'likely,' as it is used in the statutory definition[] of . . . child endangerment, . . . means 'more likely than not.'" *State v. Tice*, 686 N.W.2d 351, 351-52 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004). The child-endangerment statute requires "more than ordinary civil negligence" and "more than a simple deviation from the standard of care." *Id.* at 355 (emphasis omitted).

The state presented evidence that Huffman drove while impaired by a controlled substance. Officers testified that Huffman spoke slowly and nonsensically and that his conversation trailed off. They also testified that he had bloodshot eyes and that he exhibited poor balance during the field sobriety testing. Following the field sobriety tests, officers believed that he was under the influence of a controlled substance. Huffman admitted to using Suboxone, a controlled substance, and packages of Suboxone were discovered on his person. The state also presented evidence that, while Huffman drove, his seven-year-old daughter was seated on the floor on the rear passenger side of the vehicle between a passenger's legs. Investigator Holden described the child as being "wedged behind . . . the front seat passenger and the rear on the floor boards between the adult female occupant's legs and the front seat." The child was not wearing a seatbelt, and three tires were stacked above her on the rear driver's side seat. Photographs depicting the placement of the child,

9

female passenger, and tires in the vehicle were admitted into evidence. This evidence was sufficient to permit the jury to reasonably conclude that Huffman's daughter was placed in a situation where she was "likely to [be] substantially harm[ed]" and to find Huffman guilty of child endangerment. *See* Minn. Stat. § 609.378, subd. 1(b)(1). We do not address the same behavioral incident sentencing issue because of the reversal of the conviction of second-degree DWI for test refusal.

**Affirmed in part and reversed in part.**