*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0106**

Robert David Stoneburner, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent,

**Filed August 8, 2016
Affirmed
Stauber, Judge**

Stearns County District Court
File No. 73-CV-15-4852

Robert David Stoneburner, Stoneburner Law Office, Paynesville, Minnesota (attorney pro se)

Lori Swanson, Attorney General, Cory Beth Monnens, Assistant Attorney General, St. Paul, Minnesota (for respondent)

        Considered and decided by Johnson, Presiding Judge; Stauber, Judge; and Bratvold, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

        Appellant challenges the district court's order sustaining the revocation of his driving privileges, arguing that the police officer did not have a reasonable, articulable

suspicion of criminal activity to support an investigatory stop and that his constitutional rights were violated by a warrantless blood test. We affirm.

**FACTS**

On March 21, 2015, Cold Spring-Richmond police officer Christi Hoffman, who had more than twelve years of law-enforcement experience, was on patrol in the city of Richmond. Hoffman was traveling eastbound when she noticed a westbound car on Highway 23 that she estimated was traveling over the posted 50-mile-per-hour speed limit. Hoffman activated her squad car radar unit to confirm her visual observation. The target car was about one-half mile away at that point, which is within the radar-unit range. The radar unit showed speeds of 62, 61, and 60, at which point she locked the display, confirming her visual estimate of speed. Hoffman stopped the car, which was driven by appellant Robert David Stoneburner.

When Hoffman approached Stoneburner's car, she saw an open beer can on the console. Stoneburner was unable to perform a series of field sobriety tests, and a preliminary breath test showed a 0.119 alcohol concentration. Hoffman arrested Stoneburner and transported him to the Cold Spring police station, where she read him the implied-consent advisory. After consulting with an attorney, Stoneburner agreed to take a blood test, the results of which showed an alcohol concentration of greater than 0.08 percent.

Stoneburner requested a contested implied-consent hearing solely on the issue of whether the stop was valid. Stoneburner challenged Hoffman's ability to make a visual estimate of speed, but he primarily asserted that the radar device had not been properly

2

calibrated because Hoffman testified that she performed only a limited internal calibration test, and not an external calibration measurement. The district court sustained Stoneburner's license revocation, concluding that Hoffman had a reasonable and articulable basis for stopping Stoneburner's car based on her visual observation of speed. The district court wrote, "Whether or not Officer Hoffman's radar was precisely accurate that night, her visual observation alone was enough to justify a stop of [Stoneburner's] vehicle under Minnesota law." Stoneburner moved for amended findings or a new trial, and, for the first time, argued that the warrantless blood draw was an unconstitutional search under this court's opinion in *State v. Trahan*, 870 N.W.2d 396 (Minn. App. 2015), *review granted* (Minn. Nov. 25, 2015). The district court denied Stoneburner's motion without commenting on the constitutional issue raised in his motion. This appeal followed.

## D E C I S I O N

### I.

Both the United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. But a police officer is permitted to make a limited investigatory stop of a motor vehicle if the officer has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Anderson*, 683 N.W.2d 818, 822-23 (Minn. 2004) (quotation omitted). Even a minor violation of traffic law will support an investigatory stop. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 243 (Minn. App. 2010). We review the district court's decision regarding an investigatory stop de novo and consider the totality

3

of the circumstances to determine whether a police officer had a reasonable basis for justifying the stop. *Knapp v. Comm'r of Pub. Safety*, 610 N.W.2d 625, 628 (Minn. 2000); *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). We review the district court's factual findings for clear error. *Britton*, 604 N.W.2d at 87.

Stoneburner argues that the radar evidence did not provide a particularized and objective basis for the stop because Hoffman did not comply with Minn. Stat. § 169.14, subd. 10(a) (2014). This section states that "[i]n any prosecution in which the rate of speed of a motor vehicle is relevant" radar evidence is admissible if (1) the officer has been trained to operate the device; (2) the officer can describe how the device was set up and operated; (3) there was only minimal interference or distortion in the surrounding environment; and (4) the device was subject to testing by an external method that is accurate and reliable. *Id.* Stoneburner argues that Hoffman did not testify about a reliable external testing mechanism and, therefore, she had no particularized and objective basis for the stop. But the district court based its order sustaining Stoneburner's license revocation primarily on Hoffman's visual estimate of speed, not on the radar reading. The district court relied on Hoffman's training and her 12 years of law-enforcement experience.

Minnesota courts have approved the use of visual speed estimation when the witness has an opportunity to observe the subject vehicle and has experience with estimating the speed of moving vehicles, particularly when the witness, like Hoffman, has years of law-enforcement experience and training. *See State v. Ali*, 679 N.W.2d 359, 367 (Minn. App. 2004); *Frank v. Comm'r of Pub. Safety*, 384 N.W.2d 574, 576 (Minn.

4

App. 1986) (stating that the "factual basis for a routine traffic stop is minimal, and a traffic violation need not even occur," and reversing suppression of evidence after investigatory stop based on an estimation of speed).

Stoneburner argues that Minnesota courts have reversed speeding convictions when the radar operator had not externally calibrated the radar unit on the date of the offense. *See, e.g., State v. Gerdes*, 291 Minn. 353, 359, 191 N.W.2d 428, 432 (1971) (setting forth standards for use of radar units that include external calibration tests). But the issue here is not whether the state or the commissioner can prove beyond a reasonable doubt that Stoneburner was exceeding the speed limit prior to the stop; the issue is whether Hoffman had a "particularized and objective basis for suspecting" that Stoneburner was violating the law. *Wilkes*, 777 N.W.2d at 243. "The factual basis required to justify an investigative seizure is minimal." *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012). An officer must be able to show that the stop is not a "product of mere whim, caprice, or idle curiosity." *Id.* (quotation omitted). Hoffman testified to specific facts that led her to conclude that Stoneburner was violating the law: she visually observed a car that appeared to be exceeding the speed limit; she had received training in estimating the speed of moving vehicles; and her radar unit, even if not properly calibrated, confirmed her visual observation. The district court found that Hoffman was a credible witness. Because these facts provided a basis for a brief investigatory stop, the district court did not err by determining that the stop was lawful.

**II.**

Stoneburner challenges the constitutionality of the warrantless blood draw. Claims not raised or argued at the implied-consent hearing in the district court will not be considered on appeal. *Weierke v. Comm'r of Pub. Safety*, 578 N.W.2d 815, 816 (Minn. App. 1998). In his petition for judicial review of his license revocation, Stoneburner indicated that he would be challenging the warrantless blood draw. But at the hearing, he stated on the record that there was only one issue before the court, namely "the validity of the traffic stop." Accordingly, the commissioner presented no evidence regarding the advisory, Stoneburner's consent, or the results of the blood test, which are not even part of the record for this appeal. The district court's order also indicates that Stoneburner consented to the blood test and did not challenge "its validity." Stoneburner's motion for amended findings challenged the district court's conclusion that the vehicle stop was valid, but did not identify any claimed error relating to the validity of his consent or to the results of the blood test.

When the issue is raised and preserved for appellate review, a driver who consented to a blood test based on an advisory that inaccurately described the consequences of refusal may be entitled to a remand for consideration of whether (a) that consent was voluntary under the totality of the circumstances and (b) suppression of test results is required in administrative proceedings. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186 & n.9 (2016). But Stoneburner did not preserve any issue relating to his consent to the blood test, and the existing record is clearly inadequate to decide possible issues for the first time on appeal.

Stoneburner argues that he should not be deemed to have waived his "fundamental" rights. Appellate courts "ordinarily do not consider issues raised for the first time on appeal, even when those issues" relate to constitutional challenges, but they may choose to do so, "when the interests of justice require their consideration and when doing so would not work an unfair surprise on a party." *State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011). Allowing Stoneburner to raise new issues on appeal would clearly prejudice the commissioner, who had no notice of the need to present evidence on the circumstances of Stoneburner's consent or the blood test. Accordingly, we conclude, as did the court in *Williams*, that "[t]he interests of justice do not require us to address" this claim. *See id.* at 875.

**Affirmed.**