STATE OF MINNESOTA

IN SUPREME COURT

A13-0931

Court of Appeals                                                    Gildea, C.J.
                                        Took no part, Chutich, McKeig, JJ.

State of Minnesota,

                  Appellant,

vs.                                                          Filed:  October 12, 2016
                                                      Office of Appellate Courts
Todd Eugene Trahan,

                  Respondent.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, Saint Paul, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota, for respondent.

Daniel L. Gerdts, Minneapolis, Minnesota, for amici curiae Minnesota Association of Criminal Defense Lawyers and Minnesota Society for Criminal Justice.

William A. Lemons, Minnesota County Attorneys Association, Saint Paul, Minnesota, for amici curiae Minnesota County Attorneys Association and League of Minnesota Cities.

Bell Island, Island & Ruff, Attorneys at Law, PC, LLO, Gering, Nebraska; and

Barry S. Edwards, Barry S. Edwards Law Office, LLC, Minneapolis, Minnesota, for amicus curiae National College of DUI Defense, Inc.

_____

1

1. Under *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016), the Fourth Amendment does not permit the State to prosecute respondent for violating Minn. Stat. § 169A.20, subd. 2 (2014), for refusing the blood test requested of him, absent the existence of a warrant or exigent circumstances.

2. Exigent circumstances did not exist to support a warrantless search of respondent's blood.

3. Because the good-faith exception to the exclusionary rule is a rule of evidence and respondent does not challenge the admission of any evidence, the good-faith exception does not apply.

4. Because respondent cannot be prosecuted for refusing to consent to an unconstitutional search, Minn. Stat. § 169A.20, subd. 2, which criminalizes an arrestee's refusal to take a warrantless blood test, is unconstitutional as applied.

Affirmed.

O P I N I O N

GILDEA, Chief Justice.

The question we are asked to decide in this case is whether Minnesota's test refusal statute, Minn. Stat. § 169A.20, subd. 2 (2014), is constitutional as applied to respondent Todd Eugene Trahan. After Trahan was arrested on suspicion of driving while impaired, he refused to submit to a warrantless blood test. Trahan pleaded guilty to first-degree test refusal, but in postconviction proceedings, he sought to withdraw his plea, arguing that the test refusal statute was unconstitutional as applied to him. The postconviction court denied

relief, and the court of appeals affirmed. *State v. Trahan* (*Trahan I*), No. A13-0931, 2014 WL 4798876, at *1 (Minn. App. Sept. 29, 2014). We granted Trahan's petition for further review and stayed the appeal pending our decision in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), *aff'd sub nom. Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 2187 (2016). After deciding *Bernard*, we vacated the stay, reversed the court of appeals' conclusion that the test refusal statute was constitutional as applied to Trahan, and remanded for reconsideration. On remand, the court of appeals reversed Trahan's conviction. *State v. Trahan* (*Trahan II*), 870 N.W.2d 396, 405 (Minn. App. 2015). Because we conclude that the test refusal statute is unconstitutional as applied to Trahan's refusal to submit to a warrantless blood test, we affirm.

On October 24, 2012, at 12:34 a.m., a Ramsey County deputy stopped Trahan because he was speeding and driving erratically. As he approached the vehicle Trahan was driving, the deputy saw Trahan throwing his shoulder into his locked car door in an attempt to open it. Trahan was "extremely agitated." Throughout the encounter, Trahan continually screamed that he was going to have to do 67 months. Trahan smelled strongly of alcohol, had red and watery eyes, and had difficulty standing. A check of Trahan's driving record revealed that his driver's license had been canceled as inimical to public safety due to multiple driving-while-impaired convictions. Due to Trahan's "agitated and unpredictable" state, the deputy elected to forgo standard field sobriety testing. The deputy placed Trahan under arrest and transported him to a nearby jail.

At the jail, the deputy read Trahan the Minnesota Implied Consent Advisory. Trahan then asked to contact his attorney. Instead of calling an attorney, Trahan called

several individuals whom he asked for bail. After completing these calls around 1:53 a.m., the deputy requested that Trahan submit to a blood or urine test. The deputy did not have a warrant for either test. Trahan nevertheless agreed to provide a urine sample. Trahan maintains he was able to provide the deputy with an appropriate urine sample around 2:40 a.m. The deputy, however, believed that Trahan tampered with the sample and therefore treated Trahan's conduct as a refusal. The deputy then requested that Trahan submit to a blood test, which Trahan refused.

The State charged Trahan with first-degree test refusal, in violation of Minn. Stat. §§ 169A.20, subd. 2, 169A.24 (2014).[1] Trahan pleaded guilty, admitting at the plea hearing that after he was arrested on suspicion of driving while impaired, he refused to submit to a blood test. The district court accepted Trahan's plea, and convicted and sentenced Trahan.

Trahan appealed his conviction. Following the release of *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013), he moved to stay his direct appeal to pursue postconviction relief. The court of appeals granted Trahan's motion.

In a postconviction petition, Trahan argued that his guilty plea was not knowing, voluntary, or intelligent because the test refusal statute was unconstitutional under

---

[1] Under the test refusal statute, "[i]t is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)." Minn. Stat. § 169A.20, subd. 2. Minnesota law also provides that "[a]ny person who drives . . . a motor vehicle within this state . . . consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol, a controlled substance or its metabolite, or a hazardous substance" and authorizes law enforcement to request that a driver submit to a chemical test of their blood, breath, or urine in certain circumstances. *See* Minn. Stat. § 169A.51, subd. 1 (2014).

*McNeely*.  Trahan also asserted that his plea was not valid because the factual basis at the plea hearing did not support his conviction for test refusal.  The postconviction court denied relief, and the court of appeals affirmed.  *Trahan I*, No. A13-0931, 2014 WL 4798876, at *1.

But following our post-*Bernard* remand, the court of appeals reversed and remanded to the district court to allow Trahan to withdraw his guilty plea.  *Trahan II*, 870 N.W.2d at 399.  The court concluded, first, that the warrantless blood test implicated Trahan's fundamental right to be free from unreasonable searches under the Fourth Amendment.  *Id.* In particular, the court reasoned that the requested blood test was constitutionally unreasonable because the deputy had not obtained a warrant and no exception to the warrant requirement applied.  *Id.* at 400-03.  Having concluded that the test refusal statute infringed upon Trahan's fundamental right to be free from unreasonable searches, the court next determined that the statute failed strict scrutiny review under a substantive due process framework.  *Id.* at 404.  Last, the court rejected the State's contention that the good-faith exception to the exclusionary rule applied.  *Id.*  We granted the State's petition for review.

Following oral argument in our court in this case, the Supreme Court decided *Birchfield*, ___ U.S. ___, 136 S. Ct. 2160.  In *Birchfield*, the Court considered the search-incident-to-arrest exception in analyzing the constitutionality of the application of North Dakota's and Minnesota's test refusal statutes to warrantless breath and blood tests.[2]  *Id.*

---

[2]     In 2013, North Dakota adopted a law similar to Minnesota's test refusal statute that makes it a crime for a driver to refuse to submit to a test of their blood, breath, or urine to

at \_\_\_, 136 S. Ct. at 2170-75. The Court affirmed our conclusion in *Bernard* that under the search-incident-to-arrest exception to the warrant requirement, a breath test may be required of a person lawfully arrested for suspicion of driving while impaired. *Id.* at \_\_\_, 136 S. Ct. at 2184, 2187. The Court further held that the search-incident-to-arrest exception did not authorize the police to take a blood sample from a person arrested for suspicion of driving while impaired. *Id.* at \_\_\_, 136 S. Ct. at 2185. As a result, if the police lawfully arrest a person for suspicion of driving while impaired, a blood test cannot be required without a warrant or exigent circumstances, and the Fourth Amendment prohibits a person from being convicted for refusing such a test when no warrant or exigent circumstances are present. *Id.* at \_\_\_, 136 S. Ct. at 2184, 2186.[3]

In light of this holding, we ordered supplemental briefing on the impact of *Birchfield* to the question before us.[4] In responding to this request, the State conceded that the Supreme Court rejected its primary contention—raised prior to the *Birchfield* decision—that criminalizing the refusal to take a warrantless blood test, even in the absence of exigent circumstances, is generally "reasonable" under the Fourth Amendment. We agree with the State's reading of *Birchfield* in this respect, and accordingly hold that the Fourth

---

determine their alcohol concentration or the presence of other drugs. *Birchfield*, \_\_\_ U.S. at \_\_\_, 136 S. Ct. at 2170; *see also* N.D. Cent. Code § 39-08-01(1)–(3) (2016).

[3] In *Birchfield*, the Court consolidated and considered three cases, *Bernard* and two cases from North Dakota, *Birchfield* and *Beylund*. \_\_\_ U.S. at \_\_\_, 136 S. Ct. at 2170-72 (discussing three cases).

[4] The State has not argued that because Trahan pleaded guilty, he has waived his right to argue that his test refusal conviction violates his Fourth Amendment rights.

Amendment prohibits convicting Trahan for refusing the blood test requested of him absent the existence of a warrant or exigent circumstances.

Because there was no warrant obtained in this case, the State raises two alternative arguments to support its theory that Trahan's conviction satisfies the Fourth Amendment. First, the State argues that the exigent circumstances exception to the warrant requirement applies in Trahan's case. Second, the State contends that the good-faith exception to the exclusionary rule provides a basis for us to affirm Trahan's conviction. We address each argument in turn.

I.

We turn first to the State's contention that Trahan's conduct created an exigency that justified the deputy's request for a warrantless search. Specifically, the State argues that it was "entirely [Trahan's] fault that well more than two hours passed after his driving conduct before the police became aware that he was not going to cooperate with testing, and a warrant for a forced blood draw would be necessary to obtain evidence."[5] Had Trahan "promptly refused testing," the State argues, "[t]his would be a very different case," as prompt refusal "might have allowed the officers to obtain a warrant for his blood within the two-hour statutory timeframe." At a minimum, the State requests that we remand for further fact-finding with respect to whether there were exigent circumstances, noting the importance of determining "the availability of a warrant at or around 2:40 a.m. on

---

[5]   It is a crime in Minnesota "for any person to drive, operate, or be in physical control of any motor vehicle . . . when . . . the person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motor vehicle is 0.08 or more." Minn. Stat. § 169A.20, subd. 1(5) (2014).

7

October 24, 2012," and that it had "no reason to develop the record" due to Trahan's guilty plea. We need not remand this issue to the district court for fact-finding and a legal determination regarding whether an exigency existed, however, because even if we accept the State's version of the facts, there was no exigency in this case. *See State v. Stavish*, 868 N.W.2d 670, 677 (Minn. 2015) (noting that in determining whether exigent circumstances justified a warrantless blood draw, we review the district court's findings of fact for clear error but review the district court's "ultimate determination of exigency de novo").

The exigent circumstances exception to the warrant requirement "applies when 'the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.' " *Id.* at 675 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). In determining whether exigent circumstances exist, courts follow a totality-of-the-circumstances approach. *McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1559 (2013). More specifically, in the context of a warrantless, nonconsensual blood test of a suspected drunk driver, we examine whether "it was objectively reasonable for the officer to conclude that he or she was faced with an emergency, in which the delay necessary to obtain a warrant would significantly undermine the efficacy of the search," based on all of the facts "reasonably available to the officer at the time of the search." *Stavish*, 868 N.W.2d at 676-77. The government has the burden to show that exigent circumstances existed. *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984).

In *Stavish*, we discussed the importance of drawing a suspected drunk driver's blood within 2 hours of an accident. 868 N.W.2d at 678. We said that drawing blood within the 2-hour window was important "to ensure the reliability and admissibility of the alcohol concentration evidence." *Id.* And specifically with respect to the exigency inquiry, we said that "the 2-hour window is relevant . . . because collecting a blood sample within that window best ensures that the sample can be used to prove impairment." *Id.* at n.2; *cf. McNeely*, ___ U.S. at ___, 133 S. Ct. at 1563 (noting that experts can "work backwards" from the time of sampling to determine alcohol concentration at the time of the alleged offense, but explaining that "longer intervals may raise questions about the accuracy of the calculation").

We concluded in *Stavish* that the State proved the existence of exigent circumstances because it was objectively reasonable for the police to conclude that they would not be able to secure a blood sample within the 2-hour window. 868 N.W.2d at 678. We based this conclusion on the fact that Stavish "sustained serious injuries that necessitated emergency medical treatment at a hospital and potentially required that he be transported by helicopter to another hospital." *Id.* We said that "Stavish's medical condition and need for treatment rendered his future availability for a blood draw uncertain," and as a result, police could proceed with the warrantless blood draw based on the emergency. *Id.*

Unlike in *Stavish*, our assessment of the circumstances presented here convinces us that there was no exigency. The police stopped Trahan for driving while impaired at 12:34 a.m., but Trahan's refusal to take a blood test did not occur until 2:40 a.m. As the

9

State acknowledged at oral argument, the window for proving that Trahan had a blood-alcohol content of .08 or more within 2 hours of operating a motor vehicle had already expired by the time Trahan refused to submit to a blood test. Minn. Stat. § 169A.20, subd. 1(5) (2014).

Additionally, there were no concerns about Trahan's immediate availability for testing. Indeed, Trahan was still at the jail when the officers requested that he submit to a blood test. Moreover, if blood were to be drawn, officers would have had to transport Trahan to a hospital to have his blood drawn by a medical professional, meaning that there would have been some delay during which law enforcement could have attempted to secure a warrant. *Cf. McNeely*, ___ U.S. at ___, 133 S. Ct. at 1561 (noting that the officer can take steps to secure a warrant during the inevitable delay that will occur in the time that it takes to transport the suspect to a hospital for testing).

In short, given the expiration of the 2-hour statutory window, Trahan's accessibility to police, and the time available for police to secure a warrant while transporting Trahan to a hospital, the circumstances here do not indicate that obtaining a warrant would have "significantly undermine[d] the efficacy of the search." *Stavish*, 868 N.W.2d at 677. Accordingly, we hold that the State cannot meet its burden to prove exigent circumstances.

II.

We turn next to the State's contention that the good-faith exception to the exclusionary rule, *see State v. Lindquist*, 869 N.W.2d 863, 865 (Minn. 2015), requires us to affirm Trahan's test refusal conviction. Specifically, the State argues that because the deputy objectively relied in good faith on binding appellate precedent in opting not to

10

obtain a warrant, we should decline to suppress evidence of Trahan's test refusal and uphold his conviction. We are unpersuaded.

The exclusionary rule is a "judicially created rule of evidence" that bars the admission of evidence obtained in violation of the Fourth Amendment. *Lindquist*, 869 N.W.2d at 874; *see United States v. Calandra*, 414 U.S. 338, 348 (1974). The good-faith exception, in turn, does not require the suppression of illegally obtained evidence when the evidence is obtained in " 'reasonable reliance' " on " 'binding appellate precedent' " that " 'specifically *authorizes* a particular police practice' " at the time of the search. *Lindquist*, 869 N.W.2d at 869 (quoting *Davis v. United States*, 564 U.S. 229, 241 (2011)). Here, however, the State has not used any alcohol-concentration evidence to convict Trahan. Rather, under the facts of his case, Trahan is challenging the constitutional validity of his conviction, which did not result from the admission of *any* illegally obtained evidence. Because Trahan is not seeking to suppress any evidence, the good-faith exception has no applicability.

But, according to the State, *Birchfield* supports the application of the good-faith exception here. In *Birchfield*, the Court reversed appellant Birchfield's test refusal conviction, which involved the refusal of a warrantless blood test. ___ U.S. at ___, 136 S. Ct. at 2186. On the other hand, the Court vacated the suspension of appellant Beylund's driver's license, who consented to a blood test following an advisory that refusal was a crime. *Id.* at ___, 136 S. Ct. at 2186. The Court remanded his case for a determination of whether his consent was voluntary and if not, whether the evidence "must

11

be suppressed when the search was carried out pursuant to a state statute." *Id.* at ___, 136 S. Ct. at 2186 n.9.

The State relies on Beylund's case and the above-quoted language to contend that *Birchfield* supports the application of the good-faith exception here. But Beylund's case is plainly inapposite. Beylund agreed to take a blood test, and the State determined his alcohol concentration from the blood sample it took. *Id.* at ___, 136 S. Ct. at 2186. The good-faith exception had potential applicability to Beylund's case because the government actually offered evidence of Beylund's alcohol concentration, which was determined from the blood test, at an administrative proceeding to suspend Beylund's license. *See id.* at ___, 136 S. Ct. at 2186. By contrast, as in Birchfield's case, the State has not used any blood-test evidence to convict Trahan, and Trahan has not sought to exclude any evidence. Accordingly, the State's attempt to argue that the test refusal statute is constitutional, as applied to Trahan by means of the good-faith exception, fails.

### III.

Having concluded that a warrantless blood test of Trahan would have violated the Fourth Amendment, the question remains whether the State can prosecute Trahan for refusing to submit to an unconstitutional search. *Birchfield* is dispositive. There, the Supreme Court held that under the Fourth Amendment, North Dakota could not prosecute Birchfield for refusing to submit to an unconstitutional blood test. *Id.* at ___, 136 S. Ct. at 2186. We reach the same conclusion here and hold that Trahan cannot be prosecuted

for refusing to submit to an unconstitutional warrantless blood test, and that Minn. Stat. § 169A.20, subd. 2, is unconstitutional as applied.

Affirmed.


CHUTICH, J., took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.