STATE OF MINNESOTA

IN SUPREME COURT

A24-0250

Court of Appeals                                                      McKeig, J.
                                                      Took no part, Hennesy, J.
State of Minnesota,

                    Respondent,

vs.                                                      Filed: November 12, 2025
                                                      Office of Appellate Courts
Brian Russell Lueck,

                    Appellant.

————————————————

Keith Ellison, Attorney General, Saint Paul, Minnesota;

Kyra Ladd, Wadena County Attorney, Wadena, Minnesota; and

Scott A. Hersey, Special Assistant Wadena County Attorney, Saint Paul, Minnesota, for respondent.

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota, for appellant.

————————————————

S Y L L A B U S

1.      When a warrant authorizes one type of chemical test—either blood or urine—a person's refusal to submit to that specific test, and not another, is required to sustain a conviction for test refusal under Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2.

1

2.     A test refusal conviction based on refusal of a warranted chemical test does not violate the Fourth Amendment.

Affirmed.

O P I N I O N

MCKEIG, Justice.

This case concerns the constitutionality of Minn. Stat. § 169A.20, subd. 2(2), the test-refusal statute, as applied to a driver who refuses a chemical test where law enforcement obtained a warrant authorizing only one type of test—either blood or urine, but not both.  Specifically, we must determine if a prosecution in this circumstance would violate a driver's Fourth Amendment rights, and whether offering a test that is not authorized by the warrant implicates the Fourth Amendment.  In order to resolve these constitutional issues, we must first decide an issue of statutory interpretation: whether Minn. Stat. § 169A.20, subd. 2(2), which incorporates Minn. Stat. § 171.177, subd. 2 (governing testing pursuant to a search warrant), requires a person to refuse both a blood and a urine test to be convicted of test refusal when the warrant authorizes a single type of test.

In 2023, appellant Brian Russell Lueck was involved in a head-on collision when he attempted to pass several vehicles during a snowstorm.  Police detained Lueck on suspicion of driving while impaired and obtained a search warrant for Lueck's blood.  Police did not obtain a search warrant for Lueck's urine.  Lueck refused to submit to both a blood test and a urine test.  Lueck was charged with first-degree test refusal.  He moved to suppress his refusal to submit to both tests and to dismiss the test refusal charge.  Lueck

2

argued that the Fourth Amendment prohibited his test-refusal charge because applicable statutes required him to refuse both a blood and a urine test in order to be charged with test refusal, but police did not have a warrant for a urine test. The district court denied Lueck's motion, and Lueck was convicted of first-degree test refusal. The court of appeals affirmed.

We hold that the plain language of Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2, requires that, in cases where the warrant authorizes one type of chemical test— only a blood test or only a urine test—the person may be convicted of test refusal if the person refuses only the test authorized in the warrant. The person does not need to also refuse the alternative test. In this case, where the warrant authorized solely a blood test, the State needed to prove that Lueck refused a blood test in order to convict him of test refusal. We further hold that Lueck's test-refusal conviction did not violate the Fourth Amendment because it was based only on Lueck's refusal of a warranted blood test. Accordingly, we affirm the ultimate decision of the court of appeals, although on other grounds.

**FACTS**

The facts of this case are undisputed. On March 11, 2023, at approximately 11:00 a.m., Lueck was involved in a head-on collision when he attempted to pass several vehicles, including a snowplow, on Highway 71 in Wadena County during a snowstorm. After the accident, police detained Lueck on suspicion of driving while impaired and obtained a search warrant for Lueck's blood. While en route to the hospital, police presented Lueck with the search warrant and told him that a judge "issued a blood draw

3

warrant for you. Refusal to submit is a crime. Do you understand that?" Seven minutes later, at the hospital, Lueck refused to submit to a blood draw. Police told Lueck that "refusal to test is a crime. So, you're refusing both a blood and a urine test." Lueck refused to submit to testing.[1]

Respondent State of Minnesota charged Lueck with several offenses, including first-degree test refusal, Minn. Stat. § 169A.24, subd. 1(2).[2] Lueck moved to suppress his refusal to submit to both blood and urine tests and dismiss the test-refusal charge. He argued that the Fourth Amendment prohibited this charge because Minn. Stat. § 171.177, subd. 2, required him to refuse both a blood and a urine test in order to be charged with test refusal, but police did not have a warrant for a urine test. The district court rejected this argument, concluding that "Minn. Stat. § 171.177 only requires law enforcement to offer a urine test if a defendant refuses to submit to a blood test to prosecute for test refusal" and

---

[1]     Although the record does not indicate how Lueck refused the urine test, Lueck conceded in his briefing and oral argument before us that he refused to submit to a warrantless urine test.

[2]     A person commits first-degree driving while impaired if they "violate[] section 169A.20 (driving while impaired)" and they "ha[ve] previously been convicted of a felony under this section." Minn. Stat. § 169A.24, subd. 1(2). The State alleged that Lueck violated Minn. Stat. §169A.20, subd. 2(2), which makes it a crime for "any person to refuse to submit to a chemical test . . . of the person's blood or urine as required by a search warrant under sections 171.177 and 626.04 to 626.18." We refer to this charge as first-degree test refusal.

4

does not require a search warrant "for both a defendant's blood and urine to prosecute for test refusal." It denied Lueck's motion to suppress and dismiss.

Lueck later waived his right to a jury trial, and the parties agreed that the district court would decide Lueck's guilt based on stipulated facts pursuant to Minn. R. Crim. P. 26.01, subd. 3. As part of this agreement, the State agreed to dismiss all the charges except for the test-refusal charge. The district court found Lueck guilty of first-degree test refusal and sentenced him to 48 months in prison.

Lueck appealed his conviction, raising the same statutory and constitutional arguments he made in the district court. *State v. Lueck*, No. A24-0250, 2024 WL 4879776, at *1–2 (Minn. App. Nov. 25, 2024). The court of appeals affirmed. *Id.* at *4. Specifically, the court of appeals held that "[t]he statutory language [in Minn. Stat. § 171.177, subd. 2] is clear: a person commits the crime of test refusal if he or she 'refuses' (i.e., 'objects to') the test that was initially offered and for which a warrant was issued, and he or she was 'offered' another test." *Id.* at *3. The court held that the State "need not show that appellant refused the alternative test." *Id.* It concluded that the district court did not err when it denied Lueck's motion to dismiss the test-refusal charge "because there is no constitutional or statutory requirement that law enforcement obtain a search warrant for both blood *and* urine." *Id.* at *4.

We granted Lueck's petition for review.

## ANALYSIS

Lueck contends that the State violated his Fourth Amendment rights when it prosecuted him for test refusal because law enforcement had no warrant for a urine test.

5

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "A search conducted without a warrant is unreasonable unless it satisfies one of the well-delineated exceptions to the warrant requirement." *State v. Barrow*, 989 N.W.2d 682, 685 (Minn. 2023) (citation omitted) (internal quotation marks omitted).

Lueck relies on *Birchfield v. North Dakota*, 579 U.S. 438 (2016), *State v. Trahan*, 886 N.W.2d 216 (Minn. 2016), and *State v. Thompson*, 886 N.W.2d 224 (Minn. 2016), to support his constitutional argument. In *Birchfield*, the Supreme Court considered whether statutes that criminalize a suspected impaired driver's refusal to test for intoxication violated the Fourth Amendment. 579 U.S. at 444. The Court held that while a breath test was a permissible search incident to a lawful arrest for impaired driving, a blood test was not. *Id.* at 476. Accordingly, criminalizing a suspected impaired driver's refusal of a warrantless blood test is only permissible where the exigent circumstances exception to the warrant requirement applies. *Id.* at 474–75. Later that same year, we held that, under *Birchfield*, a Minnesota statute criminalizing the refusal of warrantless blood tests and urine tests was unconstitutional as applied to the defendants in those cases. *Trahan*, 886 N.W.2d at 224 (warrantless blood test); *Thompson*, 886 N.W.2d at 233–34 (warrantless urine test).

In 2017, the Minnesota Legislature responded by enacting several statutes that are relevant here. The Legislature split the test-refusal statute into two provisions, one that addresses the refusal of a breath test, Minn. Stat. § 169A.20, subd. 2(1), and another that addresses the refusal of a blood or urine test, Minn. Stat. § 169A.20, subd. 2(2). *See* Act of May 23, 2017, ch. 83, art. 2, § 2, 2017 Minn. Laws 351, 355. It also enacted Minn. Stat.

6

§ 171.177, establishing testing advisory and civil driver's license revocation provisions for warranted test refusal or failure. *See* Act of May 23, 2017, ch. 83, art. 2, § 10, 2017 Minn. Laws 351, 360–66.

Lueck argues that his test-refusal charge violated the Fourth Amendment under *Birchfield*, *Trahan*, and *Thompson* because the officer did not obtain a warrant for a urine test. Lueck's constitutional argument is premised on an issue of statutory interpretation. He claims that Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2, always require a person to refuse *both* a blood *and* a urine test in order to be convicted of test refusal. And *Birchfield*, *Trahan*, and *Thompson* require a warrant (unless an exception applies) for both blood and urine tests. Thus, according to Lueck, because the statute requires refusal of both tests before charge and conviction, and because both tests require a warrant, the statute cannot be constitutionally applied unless the State obtains warrants for both tests. Lueck maintains that because the State only obtained a warrant for a blood test, his test refusal charge violated the Fourth Amendment.

Because Lueck's constitutional argument turns on his particular understanding of Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2, to resolve this issue, we must first interpret those statutes before determining whether Lueck's test-refusal prosecution was unconstitutional under the Fourth Amendment.

I.

We start with whether Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2, always require a person to refuse both a blood and a urine test in order to commit test refusal. We review questions of statutory interpretation de novo. *Roberts v. State*, 945

7

N.W.2d 850, 853 (Minn. 2020). The objective of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *See* Minn. Stat. § 645.16; *State v. Latino*, 15 N.W.3d 654, 658 (Minn. 2025). "We begin our analysis with the relevant statutory text because the plain language of the statute is our best guide to the Legislature's intent." *Latino*, 15 N.W.3d at 659 (citation omitted) (internal quotation marks omitted). When interpreting a statute, the first step is to determine whether the language is ambiguous. *Id.* at 658–59. If there is "only one reasonable way to read the text," the statute is unambiguous, and we enforce the statute's plain meaning. *State v. Fugalli*, 967 N.W.2d 74, 77 (Minn. 2021); *Latino*, 15 N.W.3d at 659.

Minnesota Statutes § 169A.20, subd. 2(2), creates the crime of test refusal for blood or urine tests authorized by a warrant: "It is a crime for any person to refuse to submit to a chemical test . . . of the person's blood or urine as required by a search warrant under sections 171.177 and 626.04 to 626.18."[3] The plain language of Minn. Stat. § 169A.20, subd. 2(2), demonstrates that it is a crime to refuse either a "blood *or* urine" test that has been authorized by a search warrant (emphasis added); it does not state that it is a crime for a person to refuse tests of their "blood *and* urine." "If the Legislature unambiguously uses the word 'or,' we read the term in the disjunctive and require that only one of the possible factual situations be present in order for the statute to be satisfied." *State v. Abdus-*

---

[3] However, a warrant is not required if the exigent circumstances exception applies. Minn. Stat. § 169A.51, subd. (3)(b) ("When, under the provisions of section 169A.20, 169A.51, or 171.177, a search warrant is required for a blood or urine test, that requirement is met if a judicially recognized exception to the warrant requirement is applicable."). The State has never argued that the exigent circumstances exception applies in this case.

*Salam*, 1 N.W.3d 871, 878 (Minn. 2024) (citation omitted) (internal quotation marks omitted).  No other language in the statute indicates that "or" means something different than its usual meaning of the disjunctive.  The unambiguous plain meaning of Minn. Stat. § 169A.20, subd. 2(2), is that a person's refusal to submit to a test of blood *or* urine as required by a warrant, not both, is all that is required for the person to commit the crime of test refusal.

Minnesota Statutes § 169A.20, subd. 2(2), criminalizes refusal of a blood or urine test "as required by a search warrant under section[] 171.177."  Accordingly, the next step is to consider whether Minn. Stat. § 171.177 is unambiguous as to its requirements for the tests a driver must refuse in order to commit test refusal.  Minnesota Statutes section 171.177, subdivision 2 provides:

> The peace officer who directs a test pursuant to a search warrant shall direct a blood or urine test as provided in the warrant.  If the warrant authorizes either a blood or urine test, the officer may direct whether the test is of blood or urine.  If the person to whom the test is directed objects to the test, the officer shall offer the person an alternative test of either blood or urine.  Action may be taken against a person who refuses to take a blood test only if a urine test was offered and action may be taken against a person who refuses to take a urine test only if a blood test was offered.

The first sentence of section 171.177, subdivision 2 indicates that the officer "shall direct a blood or urine test as provided in the warrant." *Id.*  The warrant, therefore, dictates which test the officer "shall direct": if the officer obtains a warrant for a blood test, the officer must direct the person to submit to a blood test; if the officer obtains a warrant for a urine test, the officer must direct the person to submit to a urine test. *Id.*  The second sentence addresses situations where "the warrant authorizes *either* a blood or urine test."

9

*Id.* (emphasis added).  In this situation, "the officer may direct whether the test is of blood or urine" according to the officer's own discretion.[4]  *See Nash v. Comm'r of Pub. Safety*, 4 N.W.3d 812, 816 (Minn. 2024) ("[S]ubdivision 2 tells us that when a warrant authorizes either a blood or urine test . . . the officer has discretion to decide which test to use.").

As both parties acknowledge, the plain language of these first two sentences allows for two types of warrants—those that authorize a single type of test and those that authorize either a blood or urine test.  The parties also do not dispute—and we agree—that the first sentence of section 171.177, subdivision 2 applies in this case and that the second sentence does not apply because the warrant authorized only a blood test.

There is, however, a dispute about the application of the last two sentences of section 171.177, subdivision 2, which require the officer to "offer the person an alternative test of either blood or urine" if they refuse the test and state that "[a]ction may be taken against a person who refuses to take a blood test only if a urine test was offered," and vice versa.  Minn. Stat. § 171.177, subd. 2.  Lueck argues that a person can only be charged with test refusal if they refuse to submit to both a blood test *and* a urine test.  He claims that the statutory requirement that the officer offer the alternative test after the person refused to submit to the first test implicitly requires that the person must also refuse the alternative test.  Lueck relies in part on our decision in *Nash*, where we stated several times

---

[4]      There are evidentiary reasons why the officer may prefer one chemical test over the other.  *See Lueck*, 2024 WL 4879776, at *6 (Ede, J., concurring specially) (noting one of those reasons is "to quantify the amount of controlled substance present in a suspect's blood instead of a perhaps less-probative measure of chemical metabolite present in their urine").

that section 171.177, subdivision 2 requires that a person refuse both a blood and a urine test in order to be charged with test refusal. 4 N.W.3d at 816, 818, 819, 820 n.9 (Minn. 2024).[5] The State argues that section 171.177, subdivision 2 does *not* require the person to refuse the alternative test; it requires only that the person must refuse the first test of blood or urine and that the officer must offer the alternative test of blood or urine. According to the State, the person's response to the offer of the alternative test is immaterial.

The court of appeals agreed with the State's interpretation of section 171.177, subdivision 2. *Lueck*, 2024 WL 4879776, at *2–3. The court held that the plain statutory language requires that, to be convicted of test refusal under Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2, a person must refuse a warranted chemical test of blood or urine *and be offered* an alternative test, and that the State "need not show that [the person] refused the alternative test." *Id.* at *3. In doing so, the court of appeals held that our statements to the contrary in *Nash* were dicta and "not germane to the decision." *Id.* (citing *Nash*, 4 N.W.3d at 821 (holding the peace officer's warning that "refusal to take a test is a crime" satisfied the advisory provision of Minn. Stat. § 171.177, subd. 1)).

We conclude that neither party's interpretation of the last two sentences of section 171.177, subdivision 2 is reasonable. We do not look at statutory language "in isolation." *State v. Gaiovnik*, 794 N.W.2d 643, 647 (Minn. 2011). Instead, we interpret

---

[5]    However, as discussed below, this case is distinguishable from *Nash*, where law enforcement obtained a warrant authorizing a test of Nash's blood *or urine*. *Nash*, 4 N.W.3d at 814. Here, law enforcement only obtained a warrant for Lueck's blood.

words and sentences in a statute "as a whole" and "in the light of their context." *Id.* (citation omitted) (internal quotation marks omitted). The first sentence of section 171.177, subdivision 2 requires the officer to "direct a blood or urine test *as provided in the warrant.*" Minn. Stat. § 171.177, subd. 2 (emphasis added). If, as both parties argue, the third and fourth sentences of section 171.177, subdivision 2 apply to situations where the warrant *only* authorizes a blood test, then they would require the officer to offer a urine test that was *not* provided in the warrant. Such an offer would contradict the requirement in section 171.177, subdivision 2 that the officer "direct a blood or urine test as provided in the warrant." Because Lueck's and the State's interpretations apply the last two sentences of section 171.177, subdivision 2 when the warrant authorizes only one type of chemical test, their interpretations are in direct conflict with that subdivision's explicit warrant requirement. These interpretations are therefore unreasonable in light of the statute's language as a whole and the last two sentences' context in the statute. Instead, by their plain terms, the third and fourth sentences of section 171.177, subdivision 2 only apply in the context of the second sentence—"[i]f the warrant authorizes *either* a blood or urine test," in which case "the officer may direct" which is tested. (Emphasis added.)

This holding is consistent with our statements in *Nash*. Section 171.177, subdivision 2's requirement that the peace officer offer an alternative test does not conflict with its explicit warrant requirement where "the warrant authorizes either a blood or urine test," as described in the second sentence of section 171.177, subdivision 2. Minn. Stat. § 171.177, subd. 2. This was the situation in *Nash*, where the officer obtained a warrant for Nash's blood or urine. 4 N.W.3d at 814. In this scenario, the officer "may direct

12

whether the test is of blood or urine," according to the officer's discretion. *Id.* It follows that, if the person refuses to submit to the first test directed by the officer, section 171.177, subdivision 2 requires the officer to offer the second test that was also "provided in the warrant." *Id.*

Because the last two sentences of section 171.177, subdivision 2 do not apply when the warrant authorizes the officer to direct only one type of chemical test, the only sentence of section 171.177, subdivision 2 that applies to this situation is the first: "The peace officer who directs a test pursuant to a search warrant shall direct a blood or urine test as provided in the warrant." Minn. Stat. § 171.177, subd. 2. This language must also be considered in light of the plain language of Minn. Stat. § 169A.20, subd. 2(2), criminalizing the refusal of a single warranted test "of the person's blood or urine." Reading the plain language of Minn. Stat. § 169A.20, subd. 2(2), in conjunction with the first sentence of Minn. Stat. § 171.177, subd. 2, leads to a single reasonable conclusion: where a warrant authorizes one type of chemical test—only a blood test or only a urine test—a person must refuse only the test authorized by the warrant to be convicted of test refusal. The person need not refuse both a blood and a urine test.

Here, the officer obtained a warrant solely for Lueck's blood.[6] Therefore, Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2, require the State to prove that Lueck refused only the blood test to convict him of test refusal.

---

[6]     The fact that the officer also offered Lueck a urine test is immaterial, because the offer was not statutorily required. Similarly, that Lueck refused the urine test is immaterial because his refusal of the urine test was not the basis of the test-refusal charge.

Having concluded that Minn. Stat. §§ 169A.20, subd. 2(2), and 171.177, subd. 2, as applied here, require the State to prove that Lueck refused only a blood test in order to convict him of test refusal, we consider the constitutional implications of the test-refusal prosecution in this case. We review constitutional questions de novo. *State v. Rey*, 905 N.W.2d 490, 495 (Minn. 2018).

In *Trahan*, we summarized the Supreme Court's holding in *Birchfield* as follows: "if the police lawfully arrest a person for suspicion of driving while impaired, a blood test cannot be required without a warrant or exigent circumstances, and the Fourth Amendment prohibits a person from being convicted for refusing such a test when no warrant or exigent circumstances are present." *Trahan*, 886 N.W.2d at 221 (citing *Birchfield*, 579 U.S. at 477–78). *Birchfield* and *Trahan* clearly provide that a test-refusal conviction based on refusing a blood test does not violate the Fourth Amendment if there was a warrant for the blood test. Because Lueck's test-refusal conviction was based on refusing only a blood test and a warrant authorized the blood test, we hold that Lueck's test-refusal conviction does not violate the Fourth Amendment.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals, though on other grounds.

Affirmed.

HENNESY, J. took no part in the decision of this case.